Tazewell County, Appellee, v. W. B. Cooney, Administrator, Appellant.

1. PAUPERS, § 1*—*who not within law making support of paupers a public charge.* One who has sufficient means for his own support is not within the provisions of the law making the support of paupers a public charge, and the county has no authority to support him.

2. PAUPERS, § 8*—*when county may recover from pauper's estate.* A county may recover of the estate of one supported and maintained by it as a pauper the actual cost of such support and maintenance from the time when, through receiving a pension, he became financially able to support himself.

3. PAUPERS, § 8*—*what not presumed when county attempts to recover from pauper's estate.* It will not be presumed that, because no attempt was made by the county to charge one whom it had received and maintained as a pauper for such support and maintenance, it intended such support to be a charitable gift for which no recovery can be had, upon its being developed after the death of such person that for a portion of the time he was so maintained he was financially able to support himself.

Appeal from the Circuit Court of Tazewell county; the Hon. C. V. MILES, Judge, presiding. Heard in this court at the April term, 1919. Affirmed. Opinion filed October 21, 1919.

*See Illinois Notes Digest. Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

W. J. Reardon, for appellant.

E. E. Black, for appellee.

Mr. Justice Eldredge delivered the opinion of the court.

Henry Bradley became an inmate of the County Farm of Tazewell county in the year 1878 as a pauper. He lived there until he died April 26, 1917, during all of which time he was supported by the county as a pauper. On or before February 17, 1913, said Bradley was granted a pension of $24 per month, he having been a veteran of the Civil War. At the time of his death he had accumulated from this pension $1,338, which was on deposit in the Tremont National Bank, and this sum of money comprised the assets of his estate at his death. It is stipulated that from the time he became an inmate of the County Farm until he commenced receiving his pension in February, 1913, he had no property of any kind and was, in fact, a pauper. After his death, appellant, public administrator of said county, was appointed administrator of his estate. The county filed a claim against his estate for the sum of $832, being the actual cost of Bradley's maintenance at said institution for a period of 5 years immediately preceding his death. The claim was disallowed in the County Court, but upon appeal to the Circuit Court it was allowed for the sum of $697.38, said amount being the actual cost of his maintenance by the county from the time he began to receive his pension, February 17, 1913, to the date of his death. The claim was allowed as of the seventh class and ordered to be paid in due course of administration.

It is urged by appellant that Bradley having been received by the county in the County Farm as a pauper and maintained as such until his death, it being a charitable transaction, there could be no implied promise to make reimbursement to the county. The

policy of this State as evidenced by the act in regard to paupers is that the relatives of persons, where circumstances have unfortunately placed them in such a class, should support them and not the public generally. When a pauper has no relatives who can support him, it is the duty of the county at public expense to supply such maintenance, but the county has no authority to support persons at public expense who are financially able to maintain themselves A person having sufficient means for his own support is not within the provisions of the law, making his support a public charge. *City of Alton v. County of Madison,* 21 Ill. 115. In the case of *Dandurand v. County of Kankakee,* 196 Ill. 537, it appeared that an insane person was returned to the Kankakee County Poor Farm and Insane Asylum from the State Hospital for the Insane. He had an estate of about $2,500, and his conservator, although he knew that his ward was being maintained by the county, did nothing to provide for him. The county brought suit to recover for the cost of his support and maintenance and recovered a judgment therefor in the County Court. In this case the Supreme Court held: "He was in need of board, care and medical attention, and was absolutely unfit to be at large, and the county furnished him that care. His conservator knew the facts and did not offer to provide for him elsewhere or take any steps to have any change made. We are of opinion defendant was impliedly liable for these necessaries so furnished him." The same principle applies to the case at bar.

It is also urged that because the county had never made any attempt to charge him for his support, it will be presumed that it intended such support to be a charitable gift for which no recovery can be had. The same contention was made in the *Dandurand* case, *supra,* and was answered by the court as follows: "We think the intention does not enter into the case where the support is by a public body. If he was liable for

his own support under the law, there was no officer who could form an intention that gratuitous service should be rendered, which would bind the county and release defendant from liability.''

The judgment of the Circuit Court is affirmed.

*Affirmed.*