(No. 44858.—

A.S.S. WRECKING CO., Appellant, v. GUARANTY BANK
& TRUST CO., Trustee, *et al.*, Appellees.

*Opinion filed November 30, 1972.*

DAVID S. KREISMAN and JESSE H. BROWN, both
of Chicago (MARTIN, DRUCKER, KARCAZES, KREIS-
MAN, EPSTEIN & KITE, of counsel), for appellant.

No appearance by appellees.

MR. CHIEF JUSTICE UNDERWOOD delivered the
opinion of the court:

The plaintiff, A.S.S. Wrecking Co., brought actions

in the circuit court of Cook County to foreclose two trust deeds securing receiver's certificates issued pursuant to order of court in payment for the demolition of old buildings on two parcels of real estate in the city of Chicago. The defendants, Guaranty Bank & Trust Co. and National Boulevard Bank of Chicago, in their capacities as trustees of land trusts which held title to the respective parcels, asserted affirmative defenses and filed counterclaims. The trial court found in favor of the plaintiff on all issues and ordered foreclosure of the trust deeds. On appeal, the Appellate Court, First District, reversed and remanded. (*A.S.S. Wrecking Co. v. Guaranty Bank & Trust Co. (1971), 2 Ill.App.3d 66.*) We granted plaintiff's petition for leave to appeal.

On February 18, 1963, the circuit court of Cook County appointed Richard Keefe as receiver of two properties located at 938-944 and 1001-1005 North Wells Street in Chicago as a consequence of building code violations which existed with respect to each of the properties. The following year he was ordered to receive and accept bids for demolition of the buildings. Pursuant to that order, Keefe, as receiver, entered into two wrecking contracts with the plaintiff wherein plaintiff contracted for a specified sum to wreck each of the buildings, "taking the buildings down to grade level, leaving only solid debris, removing all burnable material." Plaintiff thereafter proceeded with the demolition work.

On May 14, 1965, the court entered orders which included findings as to each of the two parcels of real estate "that the demolition of the building *** was completed on or about April 17, 1965, and the said lots have been leveled and graded." Keefe, as receiver, was ordered to issue trust deeds securing receiver's certificates in the aggregate amount of $8,000 for demolition costs at 938-944 North Wells Street and in the aggregate amount of $15,755 in payment for demolition work at 1001-1005 North Wells Street. Each order recited that it was entered

pursuant to authority of provisions of the Municipal Code relating to dangerous and unsafe buildings (Ill.Rev.Stat. 1963, ch. 24, pars. 11–31–1, 11–31–2). In accordance with the orders, Keefe issued receiver's certificates and also executed and recorded trust deeds securing them. Each certificate provided that it was issued pursuant to order of court "to pay for valuable consideration received by said Receiver in money, material, labor or services performed pursuant to Court Order of the above-described premises, and by transferring this Note [Receiver's certificate] to a third person holder thereof, the issuer represents that such consideration has been received." The trust deeds conveyed and warranted by legal description the two parcels of real estate to Chicago Title and Trust Company as trustee, and recited that they were made by Keefe as receiver for each parcel of real estate pursuant to appointment by the circuit court of Cook County in a designated case to secure the payment of promissory notes which the receiver intends "to transfer *** for good and valuable consideration relating to the demolition and other services performed ***" on the described real estate.

Plaintiff became the holder of all of the receiver's certificates issued and transferred by Keefe in payment for the demolition work. When the certificates were not paid, plaintiff brought the instant actions to foreclose each of the trust deeds. Named as defendants in each suit were Richard Keefe as receiver, Chicago Title and Trust Company as trustee in each trust deed, and the trustee of the land trust which held title to the respective parcels of real estate, *i.e.* Guaranty Bank & Trust Co. as Trustee under Trust No. 11013 in the suit involving 938-944 North Wells and National Boulevard Bank of Chicago as Trustee under Trust No. 1613 in the suit pertaining to 1001-1005 North Wells. In each case, Richard Keefe as receiver and Chicago Title and Trust Company as trustee were defaulted for failure to appear or plead.

Guaranty and National Boulevard appeared in their

respective suits and filed pleadings which included two substantially identical affirmative defenses and counterclaims. The first affirmative defenses alleged that the date of default in payment of the receiver's certificates occurred more than two years prior to the commencement of the foreclosure action on August 23, 1967, and "accordingly, this action is barred by the provisions of Ill.Rev.Stat. ch. 24, par. 11—31—2 (1965), which provides that actions to foreclose such a trust deed must be commenced within two years after the date of default." The second affirmative defenses alleged that the plaintiff had filled the properties with "unfit, combustible materials in violation of the contract" and that such "failure of plaintiff to perform its contractual obligation bars recovery under the receiver's certificates held by it and consequently bars foreclosure of the trust deeds given as security for the payment of the receiver's certificates." The counterclaims filed by Guaranty and National Boulevard each alleged breach of the demolition contract and asked for damages in the amount of $10,000 as to 938-944 North Wells and $8,000 as to 1001-1005 North Wells, which were the estimated costs of excavating and refilling the respective properties with solid material.

Plaintiff's pretrial motions to strike the first affirmative defenses and the counterclaims were allowed as to the first affirmative defenses but denied as to the counterclaims. Defendants were thereafter granted leave to amend their counterclaims, and the causes were consolidated for trial. There was evidence at the trial that at the time Keefe contracted and paid for the demolition work through the issuance of receiver's certificates secured by trust deeds he was also the beneficial owner of the two parcels of real estate in an individual capacity by reason of his ownership of beneficial interests in the two land trusts which had acquired title to the properties in tax and mortgage foreclosure proceedings after his appointment as receiver. It is also clear that Keefe's failure to disclose his

acquisition of the beneficial interest in these properties during his tenure as receiver was the basis for vacation of the order discharging him as receiver and a subsequent contempt order which ordered the properties sold and imposed a fine. (See *City of Chicago v. Hart Building Corp. (1969), 116 Ill.App.2d. 39.*) This contempt judgment had been entered in the trial court by a different judge at the time the case now before us was being heard, and the contempt proceedings were the subject of comment by counsel and the court. After hearing evidence concerning the sufficiency of the demolition work performed by plaintiff, the trial court rejected the second affirmative defenses, found against defendants on the counterclaims and ordered foreclosure and sale of each parcel of real estate.

The three questions which are presented for our review are whether the trial court erred (1) in striking defendants' first affirmative defenses which alleged that the plaintiff's actions were barred by the provisions of the Municipal Code providing that a suit to foreclose the lien of a receiver's certificate must be brought within two years of the date of default; (2) in rejecting defendants' second affirmative defenses which alleged failure of consideration for the issuance of the receiver's certificates due to improper demolition work; and (3) in holding for plaintiff and against defendants on the counterclaims which alleged breach of the demolition contracts.

As to the first issue, we note that the two-year limitation period on which defendants rely was added to the Municipal Code by an amendment to section 11−31−2 which became effective August 5, 1965 (Ill.Rev.Stat. 1965, ch. 24, par. 11−31−2). It is undisputed that the receiver's certificates in question were issued prior to August 5, 1965, at a time when there was no statutory provision limiting the time within which an action must be commenced to foreclose the lien of receiver's certificates. The appellate court concluded that if the amendment was

construed to apply retroactively to certificates issued prior to the effective date of the amendment, the result would be an impairment of obligation of existing contracts. In order to avoid an unconstitutional construction of the statute, the appellate court held that the limitation period contained in the amendment must not be applied to receiver's certificates issued prior to August 5, 1965. We concur in that determination. (See *Hogan v. Bleeker (1963), 29 Ill.2d 181.*) Accordingly, we hold that the trial court did not err in allowing plaintiff's motion to strike the first affirmative defenses.

The principal question raised by the second affirmative defenses and the counterclaims was whether plaintiff complied with the provision of the demolition contracts which required demolition of the buildings to grade level "leaving only solid debris and removing all burnable material." The evidence on this issue was conflicting. In support of the defendants' allegations that the excavations contained an excessive amount of wood which was not a proper fill material, there was testimony by Keefe that after the demolition work was completed he noticed various problems, including the formation of cavities, with respect to the fill materials; testimony by an engineer associated with a soil testing firm that two test borings at each site indicated that the quantity of wood ranged at various levels from 0 to 35 percent at 938-944 North Wells and from 0 to 50 percent at 1001-1005 North Wells; and photographs of the properties which appeared to show wood in the fill. The plaintiff's case included the testimony of a building inspector for the city of Chicago who had inspected demolition work on "hundreds" of buildings. He testified that it is inevitable that some wood will fall into the basement of a building which is being demolished; that he had inspected the two buildings in question at various times as the demolition work progressed and saw nothing improper with respect to the fill material; and that he had approved the work as having

been completed in compliance with provisions of the City Code which required that demolition sites be filled with clean soil, cinders or other inorganic materials. There was also evidence in the nature of admissions by Keefe, whose business included the wrecking of various properties in Chicago, that on occasion he had observed the demolition work in progress but had seen nothing "unusual." After the work was completed, Keefe did nothing in the receivership proceedings to indicate to the court that the job had not been done properly, but to the contrary, he proceeded to execute and deliver the receiver's certificates and trust deeds which recited on their face that they were issued for good and valuable consideration relating to the demolition of the two buildings.

The various facts and circumstances of this case raise substantial doubts as to whether Richard Keefe, through the vehicle of a land trust of which he is the beneficial owner, should be heard to complain in equity of the sufficiency of demolition work he previously contracted and paid for by issuance of receiver's certificates secured by trust deeds in his official capacity as receiver of the properties in question. However, it is not necessary to delve into those matters, since we are of the opinion that the trial court's decision in favor of the plaintiff on the merits of the issue of performance of the demolition contract was not, contrary to the finding of the appellate court, against the manifest weight of the evidence.

Accordingly, the judgment of the Appellate Court, First District, is reversed and the judgment of the circuit court of Cook County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*