**William COZART, Plaintiff-Appellant,**

v.

**Arnold F. WINFIELD, Individually and in his capacity as Supervisor for Evanston Township, and Evanston Township, Defendants-Appellees.**

No. 81–2846.

United States Court of Appeals, Seventh Circuit.

Argued June 4, 1982.

Decided Sept. 2, 1982.

Barry A. Rose, Cook County Legal Asst., Evanston, Ill., for defendants-appellees.

Jack M. Siegel, Jack M. Siegel & Assoc., Chicago, Ill., for defendants-appellees.

Before POSNER and COFFEY, Circuit Judges, and CAMPBELL, Senior District Judge.*

COFFEY, Circuit Judge.

This is an appeal from an order of the District Court for the Northern District of Illinois, Eastern Division, Judge George Leighton presiding. The order appealed from granted the defendants' motion for summary judgment and dismissed the plaintiff's amended complaint in this action brought under 42 U.S.C. § 1983. The actions of the defendants in administering township General Assistance grants were alleged to have violated the plaintiff's due process and equal protection rights under the Fourteenth Amendment. For the reasons stated below, the order of the district court granting the defendants' motion for summary judgment and dismissing the plaintiff's amended complaint is AFFIRMED.

The defendants in this action are the City of Evanston Township, Illinois, and Arnold F. Winfield, supervisor of Evanston Township. In his capacity as supervisor, Mr. Winfield administers the township's General Assistance program which provides welfare assistance from local taxes to eligible township residents. Ill.Rev.Stat. ch. 23, § 6–1 et seq. (1979).

Plaintiff William Cozart is an unmarried adult resident of Evanston Township. On January 4, 1980, Cozart was discharged from his employment because he had been absent from work due to his choice to care for his sister's child while she was hospitalized. The day after his discharge, the plaintiff contacted the Evanston General Assistance Office to request aid because his discharge from employment left him without income. The Evanston General Assistance Office informed Cozart that, under Evanston Township's General Assistance Regulations, he could not apply or be eligible for General Assistance for a thirty-day period because he had been discharged from his employment for cause. The relevant provision of the Evanston regulation, entitled "Terminated Employees," provides:

> Persons who voluntarily leave their jobs without due cause or who are terminated for misconduct (excessive absence or tardiness, etc.) cannot file a General Assistance application for thirty (30) days from the date of termination. (III. 5. of Evanston GA Manual).

After waiting thirty days, the plaintiff applied for General Assistance on February 6, 1980. On February 26, 1980, the plaintiff received General Assistance benefits retroactive to February 6, 1980.

The plaintiff Cozart then filed a timely administrative appeal challenging the legality of the Evanston regulation and its effect of precluding him from applying for and receiving General Assistance benefits until thirty days after his employment termination. Following a hearing before the General Assistance Board of Appeals of Cook County, a final administrative decision was rendered. This decision upheld Evanston's Terminated Employees Regulation and affirmed the denial of plaintiff's right to apply for and receive General Assistance for thirty days following the termination of his employment.

Instead of appealing this administrative decision through the Illinois state court system,[1] the plaintiff filed a § 1983 action in

---

* The Honorable William J. Campbell, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

1. Under Illinois law, certiorari is the appropriate method for judicial review of decisions of municipal administrative agencies. *Smith v. Department of Public Aid*, 67 Ill.2d 529, 10 Ill.Dec. 520, 367 N.E.2d 1286 (1977). However, plaintiff's failure to exhaust state remedies does not bar his bringing a § 1983 action. *Patsy v. Board of Regents of the State of Florida*, — U.S. ——, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982).

federal district court challenging the validity of Evanston's "Terminated Employees" regulation. In his § 1983 action, the plaintiff alleged that the "Terminated Employees" regulation violated his rights to equal protection and due process by improperly imposing a requirement for General Assistance eligibility (i.e., the thirty-day waiting period) not authorized by the Illinois General Assistance Statute, Ill.Rev.Stat. ch. 23, § 6–1 et seq. (1979).[2] Plaintiff sought declaratory and permanent injunctive relief under 42 U.S.C. § 1983.

The defendants' motion to dismiss the complaint was granted by the district court on July 24, 1981, with the court finding that plaintiff failed to state a § 1983 claim or cause of action against the defendants. However, on August 7, 1981, pursuant to a Rule 59[3] motion by the plaintiff, the district court vacated its July 24, 1981 order of dismissal and granted the plaintiff Cozart the right to file an amended complaint. The plaintiff filed an amended complaint and the defendants filed another motion to dismiss. The district court granted the defendants' motion, finding again that plaintiff failed to state a claim with respect to the thirty-day wait for General Assistance benefits.[4]

## ISSUES

1. Does the Evanston "Terminated Employees" General Assistance regulation violate the Due Process clause of the Fourteenth Amendment?

2. Does the Evanston "Terminated Employees" General Assistance regulation violate the Equal Protection clause of the Fourteenth Amendment?

## DUE PROCESS

The plaintiff makes two separate due process arguments. The plaintiff's first due process claim alleges that Evanston Township, the local governmental unit charged with administration of General Assistance, is not authorized in the Illinois General Assistance Statute (Ill.Rev.Stat. ch. 23, § 6–1 et seq. (1979)) to impose the thirty-day waiting period recited in the "Terminated Employees" regulation. Thus, if there is no statutory authorization for such a regulation, the plaintiff contends, the regulation violates his substantive due process rights because it is an unauthorized deprivation of his statutory right to General Assistance. To resolve this due process issue, it is therefore necessary to determine whether the Evanston Township regulation is authorized under Illinois law. Since we find that the Evanston "Terminated Employees" regulation is permissible under the Illinois General Assistance Statute, we reject plaintiff's first due process claim and expressly refrain from deciding whether the plaintiff would have a valid due process claim were he able to prove such a violation of Illinois law.

Prior to the adoption of the present Illinois General Assistance Statute, it was long recognized in Illinois that aid to the indigent and poor was a local concern to be handled at the township level. See, e.g., People ex rel. McWard v. Wabash R. Co., 395 Ill. 243, 70 N.E.2d 36 (1947). This approach was adopted and continues in the current Illinois General Assistance Statute: "The role and authority of the township supervisor in caring for the poor has remained steady and relatively unchanged in a statutory history which dates back to

---

2. The eligibility requirements contained in the Illinois General Assistance Statute are: (1) six months residence in the locality providing assistance; (2) sufficient need; (3) ineligibility for other welfare programs; (4) registration for employment; (5) registration for uncompensated public work. Ill.Rev.Stat. ch. 23, § 6–1 et seq. (1979).

3. Fed.R.Civ.P. 59.

4. The defendants' motion to dismiss for failure to state a claim upon which relief can be granted will be treated as a motion for summary judgment and disposed of as such. See Fed.R. Civ.P. 12(b).

1874." *Johnson v. Town of City of Evanston*, 39 Ill.App.3d 419, 350 N.E.2d 70, 75 (1976). The local nature of General Assistance is reflected in the fact that Evanston General Assistance grants are funded solely from locally collected taxes. Ill.Rev.Stat. ch. 23, § 12–3 (1979).

Certain basic eligibility requirements are contained in the Illinois General Assistance Statute itself. Ill.Rev.Stat. ch. 23, § 6–2 *et seq.* In contrast to the Evanston regulation, it (the Illinois General Assistance Statute) does not contain a thirty-day waiting period. However, we do not view the enumeration of standards in the state statute as precluding or preventing a township from adopting reasonable regulations to supplement the Illinois General Assistance Statute. Our interpretation is implicit in this court's holding in *White v. Roughton*, 530 F.2d 750 (7th Cir. 1976). In *Roughton*, we held that due process mandates the adoption by a township supervisor of written standards of eligibility for General Assistance and that the township supervisor is not bound by the eligibility regulations of the Illinois Public Aid Department. If, as the plaintiff argues, the township supervisor could only look to the requirements set out in the statute, there would be no need for him to prescribe and promulgate written standards. Instead, we interpret the Illinois General Assistance Statute as allowing a township to establish reasonable eligibility requirements to supplement those contained in the statute. Our interpretation further upholds Illinois' long standing policy of delegating responsibility for General Assistance to the townships.

Section 6–2 of the Illinois General Assistance Statute provides further support for this position. Under § 6–2, township supervisors are authorized to create regulations governing the "amount and nature" of General Assistance benefits. The Evanston "Terminated Employees" regulation governs the "nature" of the General Assistance benefits; for employees who are fired for cause, the benefits do not begin until thirty days after such termination.[5]

As a second due process claim, the plaintiff argues that the thirty-day waiting period acts as an irrebuttable presumption of ineligibility for General Assistance and thus violates the Due Process clause. The plaintiff argues he should be given an opportunity to rebut this "presumption" of ineligibility at an individualized hearing. We reject this argument.

The so-called "irrebuttable presumption" analysis enjoyed a brief life in the early nineteen-seventies, when it was invoked in several cases to strike down legislative generalizations because they were not "universally true in fact."[6] Commentators criticized this doctrine, though, as "standardless, illusory" and "fundamentally misconceived."[7]

The irrebuttable presumption doctrine, never consistently applied during its brief life, was soon rejected by the Supreme Court in *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). *Salfi* set aside a lower court decision that had invalidated on irrebuttable presumption grounds a duration-of-relationship Social Security eligibility requirement for surviving wives and stepchildren of deceased wage earners. In his majority opinion, Justice Rehnquist described the irrebuttable presumption doctrine as "a virtual engine of destruction for countless legislative judgments which have heretofore been thought wholly consistent with [the Constitution]." Application of the doctrine would "represent a degree of judicial involvement in the legislative function which we have eschewed except in the most unusual circum-

---

5. *See Hopson v. Schilling*, 418 F.Supp. 1223, 1231 (N.D.Ind.1976) in which the court, commenting upon the role of the township in the administration of poor relief in Indiana, said: "Implicit in the statutory delegation of powers to the township trustee to administer poor relief is the delegation of discretionary authority to establish standards and procedures."

6. *See, e.g., Cleveland Bd. of Educ. v. La Fleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974).

7. *See*, Note, "Irrebuttable Presumptions: An Illusory Analysis" 27 Stan.L.Rev. 449 (1975) and Note, "The Irrebuttable Presumption Doctrine in the Supreme Court" 87 Harv.L.Rev. 1534 (1974).

stances." 422 U.S. at 772–73, 95 S.Ct. at 2470. The Court held there is "no basis for our requiring individualized determinations when Congress can rationally conclude not only that generalized rules are appropriate to its purposes and concerns, but also that the difficulties of individual determinations outweigh the marginal increments in the precise effectuation of Congressional concern which they might be expected to produce." 422 U.S. at 785, 95 S.Ct. at 2476.

The Supreme Court in *Salfi* abandoned the irrebuttable presumption doctrine in the area of welfare eligibility requirements. This court will not breathe life into this discredited doctrine. Accordingly, we reject plaintiff's claim that the Evanston Township regulation is an unconstitutional irrebuttable presumption of ineligibility.

## EQUAL PROTECTION

■ The plaintiff next argues that the "Terminated Employees" regulation violates the Equal Protection clause of the Fourteenth Amendment because it improperly distinguishes between two groups of General Assistance applicants: (1) those who voluntarily terminated their employment or who are fired for cause and (2) those who are involuntarily terminated without cause. Since this distinction does not discriminate against a suspect class or impinge upon a fundamental right,[8] the regulation will be upheld if it is rationally related to a legitimate state goal. We find that the regulation is rationally related to a legitimate state goal.

In deciding whether Evanston's "Terminated Employees" regulation comports with the Equal Protection clause, we are guided by the Supreme Court's words in *Dandridge v. Williams*, 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970):

[T]he intractable economic, social and even philosophical problems presented by public welfare assistance programs are

not the business of this Court. The Constitution may impose certain procedural safeguards upon systems of welfare administration. But the Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients.

The Court in *Dandridge* set out the standard to be applied to determine whether a welfare eligibility requirement violates equal protection: "If the classification has some 'reasonable basis' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'. . . 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.'" *Dandridge v. Williams*, 397 U.S. at 485, 90 S.Ct. at 1161 (citations omitted).

The Evanston "Terminated Employees" regulation is a legitimate and reasonable response to the difficult task of allocating scarce General Assistance funds; by requiring employees who quit or are fired from their job to wait thirty days for benefits, the regulation minimizes the risk that the availability of General Assistance benefits might undermine the incentive to work. The thirty-day waiting period is thus rationally related to the legitimate goals of conserving scarce taxpayers' funds and encouraging those with jobs to remain employed until such time as they have secured *other gainful employment and to stay off* General Assistance, except when they are forced to apply for aid through no fault of their own.[9] We hold, therefore, that the Evanston "Terminated Employees" regulation does not violate the Equal Protection clause of the Fourteenth Amendment.

---

8. The Supreme Court has repeatedly held that welfare benefits are not a fundamental right within the purview of the Equal Protection clause. *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

9. See *Lavine v. Milne*, 424 U.S. 577, 584 n.9, 96 S.Ct. 1010, 1015 n.9, 47 L.Ed.2d 249 (1976): "A provision denying benefits to those who quit their jobs to obtain relief is a perfectly legitimate and reasonable legislative response to the risk that the availability of welfare benefits might undermine the incentive to work."

## CONCLUSION

We reject the plaintiff's due process claims because: (1) We find that the Evanston "Terminated Employees" regulation comports with Illinois law and we expressly refrain at this time from deciding whether the plaintiff would have a valid due process claim were he able to prove such a violation of Illinois law; (2) we decline to adopt the discredited "irrebuttable presumption doctrine." Similarly, we find no merit in plaintiff's equal protection claim because the Evanston regulation is rationally related to a legitimate public goal. We therefore hold that the district court properly granted defendants' motion to dismiss.

The order of the district court dismissing plaintiff's amended complaint is AFFIRMED.