LIBERTYVILLE TOWNSHIP, Plaintiff-Appellant, *v.* PATRICIA WOOD-
BURY, Defendant-Appellee.

Second District No. 83—193

Opinion filed January 19, 1984.—Supplemental opinion filed on denial of re-
hearing March 6, 1984.

588

SIEDENFELD, P.J., dissenting.

M. R. Conzelman and Ann E. Conzelman, both of Conzelman, Schultz, Snarski & Mullen, of Waukegan, for appellant.

Gary L. Schlesinger, of Ray & Glick, of Libertyville, for appellee.

JUSTICE LINDBERG delivered the opinion of the court:

This case addresses the question whether a township may require an applicant for General Assistance to enter into a contract to repay as a condition to the receipt of benefits from the township. Because we hold such a contract to be permissible in this case, we reverse the judgments of the trial court in favor of the applicant.

On February 1, 1980, defendant Patricia Woodbury applied to the plaintiff, Libertyville Township (township), for General Assistance (GA) benefits. On the application form, Woodbury listed her house as real estate owned. At the end of the form were two statements relevant to this case: one stating that a lien would be placed on the recipient's real estate and the other being a promise by the recipient to repay the township for aid given. Woodbury signed the form and received $1,090.26 in GA benefits from the township between February 1, 1980, and March 18, 1981. On February 2, 1980, a notice of lien was filed by the township on Woodbury's house. The township supervisor testified that he would not have disbursed any aid to Woodbury if she had not agreed to repay the township. Woodbury did not repay any part of the benefits she received.

On or about April 30, 1981, Woodbury sold her house for $42,000, receiving after all prorations a balance of $15,705.49. Defendant Mid America Title Company issued a title commitment on Woodbury's house indicating the existence of the township's lien against the property. Mid America Title Company holds an escrow account in an amount sufficient to pay the lien.

On May 8, 1981, the township initiated this action in the circuit court of Lake County in a complaint seeking contractual recovery from Woodbury and seeking recovery from Mid America Title Company of the money it holds in escrow. Count I was based on a written contract to repay; count II was based on an oral agreement to repay out of specific proceeds; and count III, against Mid America Title Company, sought recovery on a lien securing the debt created by the alleged contract. Defendants' motion for summary judgment on all counts was denied as to the first two counts and granted as to the third. On the day of trial, count II was dismissed. After trial on count I, the trial court entered judgment for Woodbury, but based its decision solely on the legal issues without reference to findings of fact. The township filed timely notice of appeal, specifying the summary judgment on count III and the judgment on count I. Thus, the dismissal of count II is not before this court. See 87 Ill. 2d R. 303(c)(2).

On appeal, three issues are raised: (1) whether the township was authorized to enter into the contract to repay, (2) whether there was consideration to support the promise to repay, and (3) whether the township was authorized to impose a lien to secure the contract.

■ While a township has the general power to enter into contracts (Ill. Rev. Stat. 1979, ch. 139, par. 38), Woodbury argues and the trial court held that the contract at issue is not enforceable because the township had no statutory authorization to make a contract requiring repayment of GA benefits. Although the Illinois Public Aid Code provides various means of recovery by the State or a unit of local government from the recipient of benefits or his relatives, estate or insurer (see Ill. Rev. Stat. 1979, ch. 23, pars. 3—9, 5—13, 7—6, 11—22, 11—22a), including voluntary repayment (Ill. Rev. Stat. 1979, ch. 23, par. 11—14), there is no *statutory* right of recovery by a township against a nonmedical GA recipient. However, the Illinois Public Aid Code does not expressly answer the question of whether a township may properly obtain a *contractual* right of recovery of GA benefits. Thus, the question becomes one of statutory construction.

In addressing another issue of interpretation of the GA article of the Illinois Public Aid Code (Ill. Rev. Stat. 1979, ch. 23, pars. 6—1 through 6—7), the court in *Miller v. Department of Public Aid* (1981), 94 Ill. App. 3d 11, 418 N.E.2d 178, expressed a policy favoring a broad reading of governmental discretion. The *Miller* court, noting that the purposes of the GA program are limited in achievability by fiscal considerations, opined that constriction of that discretion which is granted to the Department of Public Aid to cope with economic concerns would defeat the legislature's aim. (94 Ill. App. 3d 11, 17,

418 N.E.2d 178, 184.) Similarly here, discretion statutorily granted to the township should be read broadly so as to further the legislature's aim to provide the greatest benefit possible under the fiscal constraints present.

Section 6—2 of the Illinois Public Aid Code provides that the "amount and nature" of GA benefits "shall be determined in accordance with local budget standards." (Ill. Rev. Stat. 1979, ch. 23, par. 6—2.) Article XII gives GA administrative powers to the township supervisor. (Ill. Rev. Stat. 1979, ch. 23, pars. 12—21, 12—21.2, 12—21.8; *Johnson v. Town of City of Evanston* (1976), 39 Ill. App. 3d 419, 350 N.E.2d 70.) In *Johnson*, the court held that the supervisor has the authority to set the basic maintenance level in the community, from which the amount of aid is to be determined under section 6—2. (39 Ill. App. 3d 419, 425, 350 N.E.2d 70, 74-75.) In *Cozart v. Winfield* (7th Cir. 1982), 687 F.2d 1058, the court stated that section 6—2 authorizes township supervisors to create regulations governing the "amount and nature" of GA benefits; hence, it interpreted the statute to permit a township regulation barring benefits to employees fired for cause until 30 days after termination as a regulation governing the "nature" of GA benefits. Similarly here, we view the township supervisor's requirement of an agreement to repay as relating to the "nature" of GA benefits.

Woodbury attempts to distinguish *Cozart v. Winfield* (7th Cir. 1982), 687 F.2d 1058, by asserting that that case involved a formal regulation adopted by the town board. In fact, the regulation in *Cozart* was apparently promulgated by the supervisor. Still, the evidence in this case shows the requiring of an agreement to repay to be merely a practice of the supervisor. The formal, written set of standards for the township's GA program, entitled "Rules, Procedures and Eligibility," does not mention agreements to repay, although it does state that "[l]iens will be placed against real estate property whenever possible." Section 6—2, in providing for the determination of the "nature" of the GA benefits, does not specify whether that determination must be by formal regulation or may be by administrative practice. While this question might serve as the basis of a procedural due process claim (see *White v. Roughton* (7th Cir. 1976), 530 F.2d 750), no such claim has been raised here.

Woodbury also argues that the regulation in *Cozart* was a reasonable one and the requirement at issue here is not. Since the requirement of a repayment agreement is aimed directly at easing local budgetary concerns and would facilitate the giving of greater benefits, it directly serves the legislature's intent. As applied in this case, the

requirement served to aid a property-owning individual who was without cash for a time. The attempt to enforce the promise to repay did not occur until Woodbury voluntarily sold her real property and, thus, had the cash to repay the township. We view the township's precondition to GA benefits to be reasonable under the facts of this case.

While no further Illinois cases can be found on point, two recent decisions from other States lend persuasive support to our interpretation that the township was authorized to enter into the contract here. In *Oliver v. Petit* (Me. 1981), 432 A.2d 428, a statute specifically gave municipalities and the State the right to recover general assistance costs from recipients in a civil action while barring such an action where repayment would make the recipient again eligible for more assistance or where the recipient is currently receiving any public assistance. The recipient in *Oliver* had requested general assistance during the time her application to the Federal Social Security Administration for Supplemental Security Income was pending. She signed an agreement by which she authorized the Social Security Administration to, in effect, reimburse the municipality and the State for their general assistance to her out of the initial SSI payment. In exchange, she received the municipality's prompt aid during the Federal application pendency. The Supreme Judicial Court of Maine determined that the statute did not bar the contract. More significant to the present case, the court held that the State's department of human services had the authority to enter into such a reimbursement contract under general statutory provisions giving the department "general supervision of the interests of health and life of the citizens of the State" and authority to "issue rules and regulations considered necessary and proper for the protection of life, health and welfare, and the successful operation of the health and welfare laws." (432 A.2d 428, 431.) In *Tunnicliff v. Pennsylvania Department of Public Welfare* (1978), 483 Pa. 275, 396 A.2d 1168, a similar contractual reimbursement scheme was upheld by the Supreme Court of Pennsylvania. These cases permit the State or local government to require a promise to reimburse as a condition to the extension of benefits to an applicant whose need is temporary because of expected federal assistance. Here, the township likewise required a promise to reimburse as a condition to the extension of GA benefits where Woodbury faced a cash-flow problem subsequently resolved by the voluntary sale of her home.

The cases cited by the parties are not helpful. The township relies upon *City of Champaign v. City of Champaign Township* (1959), 16 Ill. 2d 58, *Dandurand v. County of Kankakee* (1902), 196 Ill. 537, and *Tazewell County v. Cooney* (1919), 215 Ill. App. 617, for the proposi-

tion that public policy, even in the absence of statutory authorization, would permit recovery by the State of disbursed public aid in appropriate cases. Those cases involved recovery from a deceased's estate or for medical benefits, recoveries of the type now authorized by statute. (See Ill. Rev. Stat. 1979, ch. 23, pars. 3—9, 5—13, 7—6, 11—22.) They do not necessarily indicate that recovery is appropriate here and we therefore do not rely upon them for our disposition.

Woodbury relies upon *Nelson v. Fogelstrom* (1972), 5 Ill. App. 3d 804, 284 N.E.2d 339, for the proposition that no debtor-creditor relationship is created by the giving of public aid benefits authorized by statute. *Nelson* so held by approving the reasoning of another case which stated that the benefit payments at issue "were not made in pursuance of any contract between the parties." (*City of Worcester v. Quinn* (1939), 304 Mass. 276, 277, 23 N.E.2d 463, 464, quoted in *Nelson v. Fogelstrom* (1972), 5 Ill. App. 3d 804, 807, 284 N.E.2d 339, 341.) Thus, *Nelson* cannot be said to deny the existence of a debtor-creditor relationship where public aid benefits *are* made in pursuance of a contract between the parties.

In sum, in light of the policy to broadly read governmental discretion under the Public Aid Code so as to provide the greatest benefits possible under the fiscal constraints present, we hold that the township was authorized to enter into the agreement at issue in this case.

■ Woodbury next contends that her agreement to repay the township is unenforceable for lack of consideration. She notes that the only thing she received in exchange for her promise to repay was the GA payments. Woodbury argues that because the township was already obligated to make those payments, they cannot constitute legal consideration.

Consideration is a basic element for the existence of contract and any act or promise which is of benefit to one party or disadvantage to the other is a sufficient consideration to support a contract. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320.) However, the promise to do something which one is already legally obligated to do is not consideration and creates no new obligation. (*Moehling v. W. E. O'Neil Construction Co.* (1960), 20 Ill. 2d 255; *In re Marriage of Roth* (1981), 99 Ill. App. 3d 679, 426 N.E.2d 246.) Thus, if the township would have been legally obligated to pay Woodbury the benefits she received even without the agreement, then there was no consideration.

However, as the previous discussion demonstrated, the township supervisor possesses discretion in the granting or denial of GA benefits. While he is subject to the guidelines of the Public Aid Code and

"shall provide public aid to all persons eligible" to receive GA benefits (Ill. Rev. Stat. 1979, ch. 23, par. 12—21.8), the township supervisor has discretion in determining the standards of eligibility. (See *Johnson v. Town of City of Evanston* (1976), 39 Ill. App. 3d 419, 350 N.E.2d 70; *Cozart v. Winfield* (7th Cir. 1982), 687 F.2d 1058.) We must give wide latitude to the township supervisor in the exercise of that discretion. (See *Miller v. Department of Public Aid* (1981), 94 Ill. App. 3d 11, 418 N.E.2d 178.) His determination to provide benefits only upon a promise to repay was a valid exercise of his discretion. By providing benefits to Woodbury, the supervisor decreased the limited funds from which other eligible GA applicants might receive benefits. The supervisor's discretionary acts of determining Woodbury's eligibility and awarding her benefits from the limited township GA funds constituted sufficient consideration for Woodbury's promise to repay.

■ Finally, we address the issue of the township's authorization to impose the lien in this case. The trial court, in granting summary judgment on count III, concluded that there was no such authorization under the statutes. The township contends that the lien was a valid means of enforcing the contractual debt Woodbury owed.

There is no express statutory imposition of a township lien such as the one asserted here. The Illinois Public Aid Code does grant to the State or local governmental unit a charge or lien under certain circumstances as a means of recovery (Ill. Rev. Stat. 1979, ch. 23, pars. 3—10, 11—22), but does not specifically create a lien as a means for recovery of nonmedical GA benefits. None of the acts relating to liens creates a lien in the present case. (Ill. Rev. Stat. 1979, ch. 82, par. 1 *et seq.*) The township act (Ill. Rev. Stat. 1979, ch. 139, par. 1 *et seq.*) creates a township lien in only one provision unrelated to the present case. Ill. Rev. Stat. 1979, ch. 139, par. 126.16.

However, while none of the relevant statutes expressly provides for the type of lien asserted here, it is equally true that none of the statutes specifically or impliedly exclude the creation of such a lien. A lien may be created by agreement or by statute. (*Streams Sports Club, Ltd. v. Richmond* (1982), 109 Ill. App. 3d 689, 440 N.E.2d 1264, aff'd (1983), 99 Ill. 2d 182; *Sullivan v. Sudiak* (1975), 30 Ill. App. 3d 899, 333 N.E.2d 60.) In *Streams Sports Club*, this court held valid a lien which, while not provided for by statute, was expressly created by contract. (109 Ill. App. 3d 689, 692, 440 N.E.2d 1264, 1267.) In the application form signed by Woodbury, just above the promise to repay, it is stated, "A lien will be placed against any and all real estate property owned by a recipient." Thus, the lien asserted here was expressly provided for by contract.

While a lien in general may be contractually created in the absence of statute, the township may only have contracted for the lien if it had authority to do so. This is because townships have no inherent powers, but only those granted to them by the constitution or authorized by statute. (*Diversified Computer Services, Inc. v. Town of York* (1982), 104 Ill. App. 3d 852, 433 N.E.2d 726.) Among the powers of townships granted by statute are the power to make contracts and the power to acquire and to hold real and personal property for the use of its inhabitants. (Ill. Rev. Stat. 1979, ch. 139, par. 38.) Since a lien is property (*A.S.S. Wrecking Co. v. Guaranty Bank & Trust Co.* (1971), 2 Ill. App. 3d 66, 275 N.E.2d 724, *rev'd on other grounds* (1972), 53 Ill. 2d 249), there exists general statutory authority for a township to acquire a lien by contract.

Woodbury relies upon *Nelson v. Fogelstrom* (1972), 5 Ill. App. 3d 804, 284 N.E.2d 339, to deny the township's authority to impose a lien. In *Nelson*, the State attempted to assert a lien on a trust property interest of the estate of a deceased recipient of Old Age Assistance. The appellate court first denied the existence of the lien under section 3—10 of the Illinois Public Aid Code (Ill. Rev. Stat. 1967, ch. 23, par. 3—10) because that section establishes a lien only on real property while the beneficial interest at issue was personal property. (5 Ill. App. 3d 804, 805-06, 284 N.E.2d 339, 340-41.) The court secondly denied the existence of an equitable charge or lien on the reversionary interest of the plaintiff-settlor. In so holding, the court quoted Corpus Juris Secundum as follows: " 'Statutory provisions relating to the creation and satisfaction of the lien are controlling; and it is only pursuant to statutory provisions that the authorities may have a lien for assistance furnished.' " 5 Ill. App. 3d 804, 806, 284 N.E.2d 339, 341, quoting 81 C.J.S. *Social Security and Public Welfare* sec. 31 (now sec. 110 (1977)).

This stated rule runs counter to the township's assertion that public policy, in the absence of statute, would support the lien claimed here. However, it does not contradict our position that the lien is sustainable as contractually created pursuant to the general statutory powers of the township.

Accordingly, we reverse the summary judgment of the circuit court of Lake County on count III; we reverse the judgment of that court on count I; and we remand for further proceedings consistent with this opinion.

Reversed and remanded.

UNVERZAGT, J., concurring.

SEIDENFELD, P.J., dissenting:

I would affirm the decision of the trial court. As that court noted, although official attempts to conserve limited public funds are to be commended, the general assistance article of the Illinois Public Aid Code (Ill. Rev. Stat. 1979, ch. 23, pars. 6—1 through 6—7) does not allow the township supervisor to treat a grant of general assistance benefits as a loan.

The general assistance article of the Code, which is involved here, provides neither for requiring repayment of benefits nor for placing a lien on real estate to secure repayment of benefits. In contrast, other articles of the Code do so provide. For example, only the article governing aid to the aged, blind, and disabled (Ill. Rev. Stat. 1979, ch. 23, pars. 3—1 through 3—15) allows the State to place a lien on real property of the recipient, and this provision exempts that property occupied by the recipient as a homestead and valued at less than $25,000. (Ill. Rev. Stat. 1979, ch. 23, par. 3—10.) This article also allows the State to file a claim against the estate of the deceased recipient for the full amount of benefits paid. (Ill. Rev. Stat. 1979, ch. 23, par. 3—9.) The medical assistance article allows the State to have a charge against all claims, demands and causes of action for injuries for which persons received medical assistance benefits. Ill. Rev. Stat. 1979, ch. 23, par. 11—22.

A well-settled rule of statutory construction requires that the enumeration of a power in one section of a statute implies the prohibition of that power in another, silent, section of the statute. (*Roth v. Department of Public Aid* (1982), 109 Ill. App. 3d 457, 460.) Applying that rule here, since the legislature provided for repayment of medical benefits and for a lien to secure the repayment of aid to the aged, blind, and disabled, it prohibits a lien to secure repayment of general assistance benefits. This conclusion is supported by the fact that the administrative article provides for voluntary repayment benefits. (Ill. Rev. Stat. 1979, ch. 23, par. 11—14.) This provision would not be necessary if compulsory repayment were generally permitted.

The majority found that imposing the lien here was within the township supervisor's discretion under section 6—2 to determine the "amount and nature" of general assistance benefits (Ill. Rev. Stat. 1979, ch. 23, par. 6—2), and within the supervisor's general assistance administrative powers. (Ill. Rev. Stat. 1979, ch. 23, pars. 12—21, 12—21.2, 12—21.8.) It found that this discretion gave the supervisor the authority to impose the lien.and also found that the exercise of that

discretion provided consideration for the contract. The majority, applying the reasoning in *Miller v. Department of Public Aid* (1981), 94 Ill. App. 3d 11, 17, holds that the broad governmental discretion granted in the general assistance program allows the supervisor to obtain a contractual right to recover general assistance benefits as a condition of granting them and that to hold otherwise would unreasonably constrict that discretion.

The *Miller* court found that the language in section 6—2 (Ill. Rev. Stat. 1979, ch. 23, par. 6—2), "[p]ayments *may* also be made to provide persons receiving basic maintenance support with necessary treatment, care and supplies required because of illness or disability" (emphasis added) (Ill. Rev. Stat. 1979, ch. 23, par. 6—2), gave the Illinois Department of Public Aid discretion not to make additional payments for optical and nonemergency dental services.

*Miller* does not provide support for the conclusion that the township supervisor may determine whether persons found eligible for general assistance benefits may receive those benefits, themselves, based on criteria not found in the statute and contrary to statutory intent. This goes beyond the statutory discretion allowed. As the *Miller* court stated, "IDPA is given discretion under the Code to determine the extent and types of assistance to be forthcoming under the GA program *within the broad borders which the statute outlines.*" (Emphasis added.) 94 Ill. App. 3d 11, 19.

Under the Illinois Public Aid Code, the local governmental unit charged with administering general assistance benefits, in this case the township, must give aid to eligible persons. (Ill. Rev. Stat. 1979, ch. 23, pars. 2—14, 6—1, 12—3, 12—21.8.) Although responsibility for the administration of the general assistance program is "vested" in the township units (Ill. Rev. Stat. 1979, ch. 23, par. 12—21), this power is subject to the supervision of the Illinois Department of Public Aid. (Ill. Rev. Stat. 1979, ch. 23, par. 12—3.) The township's discretion may be increased if it accepts no State money (see Ill. Rev. Stat. 1981, ch. 23, par. 6—2), but there is no evidence in the record that Libertyville Township accepts no State money. The aid given is a grant. (Ill. Rev. Stat. 1979, ch. 23, par. 2—3.) The recipient may repay this grant voluntarily, but the repayment must state clearly that it was made without compulsion. (Ill. Rev. Stat. 1979, ch. 23, par. 11—14.) Thus, the township supervisor lacks the broad discretion the majority found.

The majority, applying the reasoning in *Cozart v. Winfield* (7th Cir. 1982), 687 F.2d 1058, found that the requirement of an agreement to repay general assistance benefits regulated the "nature" of bene-

fits granted, within section 6—2 of the Illinois Public Aid Code (Ill. Rev. Stat. 1981, ch. 23, par. 6—2), much as the requirement of a 30-day wait before an employee fired for cause could receive general assistance benefits regulated the "nature" of benefits. However, the regulation in *Cozart* required the eligible recipient only to wait 30 days before receiving benefits, whereas under the practice considered here, the eligible recipient may not receive benefits without agreeing to repay them by contracting for a lien on realty. This does not regulate the "nature" of benefits, but rather the grant, itself, of the benefits.

While the township may have general statutory authority to acquire a lien by contract, the township has no authority to impose a lien to recover a general assistance grant absent a statutory provision. (See *Nelson v. Fogelstrom* (1972), 5 Ill. App. 3d 804, 806 (aid to aged, blind and disabled; no lien on personalty allowed where a statute provided only for a lien on realty).) Further, to hold that this contract to create a lien is supported by consideration is to hold that the supervisor had discretion to deny an eligible person aid and to declare the State-created grant a loan. Since the legislature has specifically provided for liens only to recover aid to the aged, blind and disabled, and since it specifically exempts liens against homesteads in that case, I would find that conditioning the receipt of general assistance on executing a contract creating a lien on the homestead exceeds the supervisor's discretion and is contrary to legislative intent.

## SUPPLEMENTAL OPINION UPON DENIAL OF REHEARING

JUSTICE LINDBERG delivered the opinion of the court:

While we are satisfied that our opinion fully addresses most of the arguments raised by defendant Woodbury in her petition for rehearing, there are two additional points that we should discuss.

■ Woodbury contends that the statutory "workfare" provision (Ill. Rev. Stat. 1981, ch. 23, par. 6—1.7) is the sole method by which a nonmedical GA award may be recovered. This provision became effective November 26, 1979, shortly before Woodbury applied to the township for GA benefits. As with the other statutory recovery procedures in the Illinois Public Aid Code, its existence may imply the exclusion of any other *statutory* rights of public aid recovery, but it implies nothing regarding the legislature's intent to permit or to bar the creation of a governmental unit's *contractual* right to recovery. We continue to interpret the Illinois Public Aid Code to permit a contract of the type at issue here.

■ Woodbury criticizes our reliance upon the general corporate powers of the township (Ill. Rev. Stat. 1979, ch. 139, par. 38) as authority for the supervisor's power to contract for the township's lien here. While we recognize that a township supervisor is generally not authorized to exercise the corporate contracting power by himself (see *Gregg v. Town of Bourbonnais* (1945), 327 Ill. App. 253, 64 N.E.2d 106), we believe that the Illinois Public Aid Code provides such authority in this case. Townships are charged with the responsibility of providing funds for and administering GA programs. (Ill. Rev. Stat. 1979, ch. 23, par. 12—3.) In contrast to the former statute which subjected the supervisor in *Gregg* to "such restrictions and regulations as may be prescribed by the *** board of town auditors" (Ill. Rev. Stat. 1945, ch. 107, par. 20, quoted in *Gregg v. Town of Bourbonnais* (1945), 327 Ill. App. 253, 262, 64 N.E.2d 106, 110), administration of GA programs for the townships is now entrusted to township supervisors unhampered by the rules and regulations of the boards of town trustees (formerly, "boards of town auditors"). Ill. Rev. Stat. 1979, ch. 23, pars. 12—21, 12—21.2, 12—21.8; *Johnson v. Town of the City of Evanston* (1976), 39 Ill. App. 3d 419, 350 N.E.2d 70.

■ Even if the supervisor did not have authority to contract for a township lien, his action has been ratified. A township may ratify the unauthorized contracts of its agents or officers which are within its corporate powers; ratification may frequently be inferred from acquiescence after knowledge of all the material facts, or from acts inconsistent with any other supposition. (*Town of Bruce v. Dickey* (1886), 116 Ill. 527.) Here, the fact that the present suit to enforce the contract and the lien it created was filed by the township is a clear sign of ratification by the governmental unit of its supervisor's conduct.

We therefore adhere to our opinion.

UNVERZAGT, J., concurs.