In re MARRIAGE OF LESLIE LEVIN ROTH, Petitioner-Appellant and Cross-Appellee, and IRWIN LEVIN, Respondent-Appellee and Cross-Appellant.

First District (3rd Division)    Nos. 79-1364, 80-0457 cons.

Opinion filed August 19, 1981.

Grant, Grant & Stein, Chartered, and Beermann, Swerdlove, Woloshin & Barezky, both of Chicago (Miles N. Beermann and Howard A. London, of counsel), for appellant.

Joel S. Ostrow, of Chicago, for appellee.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

Leslie Levin Roth (Leslie), the petitioner-appellant and cross-appellee, and Irwin Levin (Irwin), the respondent-appellee and cross-appellant, seek review of certain orders of the circuit court of Cook County in connection with a post-decree proceeding to modify child support payments.

The parties were divorced on March 14, 1974. Leslie was awarded custody of the parties' three minor children and Irwin was ordered to pay $225 per week for child support.

On December 14, 1977, Leslie filed her petition seeking an increase in child support and other relief. Thereafter, Irwin filed his petition for reduction of the amount of child support. Following a lengthy hearing on the petitions, the trial court entered orders on May 8 and May 29, 1977, which increased the award of child support by $180 per month, reduced Irwin's obligation to pay for certain Bar Mitzvah and summer camp expenses, and awarded Leslie $1500 in attorney's fees. Leslie appeals from these orders, and Irwin cross-appeals from the award of attorney's fees.

On August 16, 1979, Leslie filed a petition for a rule to show cause in which she alleged that Irwin refused to pay the increase in child support retroactive to December 9, 1977. On February 4, 1980, the trial court entered an order which stated that the order increasing child support was not retroactive, and Leslie appeals.

### CHILD SUPPORT AWARD

Leslie testified that the children's needs in 1974 were $225 per week, the amount of Irwin's child-support payments. She asserted that in 1978, the needs of the children had increased significantly due to their advancing years and the effects of inflation. Leslie introduced into evidence cancelled checks which indicated that the cost of providing for the children had risen to over $600 per week. This figure including the children's share of the salary of a maid employed by Leslie. In her brief, Leslie asserts that the children's needs increased to approximately $2000 per month ($462 per week).

A property settlement agreement incorporated in the judgment of divorce indicated that the $225 child support award was "predicated on the husband's representation that his 1972 gross income was approximately $47,000." At the time of the divorce, Irwin owned stock in five

currency exchanges. Although there was conflicting testimony and argument concerning his current income and net worth, Irwin's 1977 tax returns revealed his salary as $67,000. In addition, Irwin conceded that his net worth was at least $834,000. This figure includes the value of a home in Glenview, stock in three additional currency exchanges and interests in commercial real estate, all of which Irwin acquired subsequent to the divorce.

There also was some dispute concerning Leslie's present income and net worth. Pursuant to a settlement in lieu of alimony, Leslie received Irwin's 50% interest in the East St. Louis Currency Exchange which provides her with substantial income. According to her tax returns, Leslie's income subsequent to the divorce was as follows:

| 1974 | $23,750 |
|------|---------|
| 1975 | 57,700  |
| 1976 | 43,071  |
| 1977 | 55,750  |

Leslie testified that her income in 1978 was $36,000. According to a financial declaration statement prepared by Leslie in this cause, her net worth was $530,090.

The trial court found that there has been a material change in circumstances since the entry of the judgment of divorce and ordered Irwin to pay the additional sum of $180 per month for child support.

Leslie argues that the trial court abused its discretion in ordering such an inadequate increase in support. She asks this court to increase the payments by $100 per week, from $225 to $325 per week.

A party seeking modification of a provision for child support must show that there has been a substantial change in circumstances since the entry of the previous judgment. (Ill. Rev. Stat. 1977, ch. 40, par. 510(a).) In order to establish a substantial change in circumstances, the petitioning party must show an increase in the needs of the child and an increase in the ability of the supporting parent to pay. (*In re Marriage of Schmerold* (1980), 88 Ill. App. 3d 348, 410 N.E.2d 629.) Where the supporting parent's ability to pay is shown, the fact that the child has grown older and the fact that the cost of living has risen are proper bases for establishing increased need. *Schmerold.*

In determining the amount of the increase, the trial court considers the same factors it considers in forumulating an original support order. (*Winter v. Winter* (1978), 69 Ill. App. 3d 359, 387 N.E.2d 695.) These factors include the financial resources of the child, the financial resources and needs of the custodial parent, the standard of living the child would have enjoyed had the marriage not been dissolved, the physical and emotional condition of the child and his educational needs, and, the financial resources and needs of the noncustodial parent. (Ill. Rev. Stat.

1977, ch. 40, par. 505.) Considerable discretion is placed in the trial court, and its order of modification will not be disturbed on review, absent an abuse of discretion. *Winter.*

■■ We agree with the trial court that there was a substantial change in circumstances since the entry of the previous judgment. Although Irwin's payments covered all of the children's needs in 1974, Leslie testified that in 1978 it required at least twice that amount to support the three children.

It was also established that Irwin's ability to support his children had increased significantly. In 1972 Irwin earned $47,000; in 1977 his salary was at least $67,000. Irwin's net worth at the time of these proceedings was in excess of $800,000. Irwin's financial success since the divorce is evidenced by his acquisition of stock in three additional currency exchanges and various interests in real estate.

Likewise, Leslie's financial situation improved after the divorce. Her interest in the East St. Louis Currency Exchange, an asset she acquired as part of a settlement in lieu of alimony, provides her with substantial income. At the time of these proceedings, Leslie's net worth was more than $500,000.

The trial court considered the income of both parties in forumulating the amount of its increase in child support. The order increasing the support by $180 per month had the following effect:

|       | Needs of children | Paid by Irwin | Paid by Leslie |
|-------|-------------------|---------------|----------------|
| 1974  | $225 per week     | $225 per week | —              |
|       | $975 per month    | $975 per month| —              |
|       |                   | 100%          | —              |
| 1979  | $462 per week     | $266.50 per week | $195.50 per week |
|       | $2002 per month   | $1155 per month | $847 per month |
|       |                   | 58%           | 42%            |

Of the $237 per week increase in the needs of the children, Leslie was required to pay 82 percent of the amount.

■■ Although Leslie's financial situation certainly requires her to contribute to the children's support, we do not believe that it was equitable to require her to bear 82 percent of the amount of the increase in the cost of raising the children. Leslie now receives a substantial income; however, Irwin's income and net worth have also increased substantially. We do not believe that the trial court fully considered Irwin's financial resources in formulating the amount of the increase. Upon careful consideration of the financial status of both parties, we hold that the child support payment shall be increased to $315 per week or $1365 per month. We believe that such a sum is equitable to both parties.

### BAR MITZVAH EXPENSES

Pursuant to the property settlement agreement, Irwin agreed that "he

will pay for a Bar Mitzvah or Confirmation celebration and party for each of the three children of the parties hereto." There was no limitation on the cost of such a party.

In 1977, a party was held at the Highland Park Country Club in celebration of the Bar Mitzvah of the parties' oldest son. Leslie testified that the cost of the party was approximately $4850. Although there was conflicting testimony concerning the amount of money that Irwin contributed for the party, the trial court found that Irwin had paid Leslie $2500. The court held that this amount satisfied Irwin's obligation pursuant to the agreement and further held that Irwin must contribute no more than $1600 for each of the other children's Bar Mitzvah parties. In explanation of his ruling, the trial court stated that the agreement was vague concerning the payment of the party expenses and that, in its opinion, $1600 was a reasonable amount to pay for each party.

Leslie argues that the trial court had no authority to limit the amount of Irwin's contribution. We agree. The settlement unambiguously stated that Irwin would pay for the party. Once an agreement is embodied in a divorce decree, its terms will not be modified absent fraud, coercion or contrariness to public policy. (*Morris v. Morris* (1979), 70 Ill. App. 3d 125, 388 N.E.2d 129; *Gaddis v. Gaddis* (1974), 20 Ill. App. 3d 267, 314 N.E.2d 627.) No such allegations were made in the instant case.

■■ Irwin contends that a condition of reasonableness is implicit in the agreement. Although we agree with his statement, we do not believe that Irwin has shown that the party for the oldest son was unreasonably expensive or extravagant for a person with Irwin's income and standard of living.

Irwin also argues that he and Leslie entered into a subsequent oral agreement to split the cost of the party. Marilyn Lewis, a friend of both parties, testified that Leslie told her of such an agreement. Leslie testified that Irwin coerced her into agreeing to share the expenses by threatening her that if she did not agree "there would be no Bar Mitzvah at all."

■■ This new agreement is unenforceable for lack of consideration. A promise to do that which one is already legally obliged to do is not consideration and does not create a new obligation. (*Trisko v. Vignola Furniture Co.* (1973), 12 Ill. App. 3d 1030, 299 N.E.2d 421.) As we have already discussed, Irwin was legally obliged to pay the entire cost of the party. His partial performance of that obligation did not constitute consideration for Leslie's alleged promise to pay half the expenses.

Thus, the portions of the circuit court's orders which modified the provision of the judgment of divorce concerning the Bar Mitzvah expenses are hereby reversed. Irwin is further ordered to reimburse Leslie for the $2350 she paid in connection with the 1977 Bar Mitzvah celebration.

## Summer Camp Expenses

The property settlement agreement contains the following provision concerning summer camp:

> "It is further agreed that while the children are of camp age and attending summer camp, that the husband shall pay for all charges and expenses of summer camp for any of the children of the parties hereto so attending. It is further agreed that the husband shall be responsible for these expenses. That the wife shall consult the husband before incurring these expenses, and shall be guided by his advice, however the husband shall not unreasonably withhold his consent. If the parties cannot agree, then they shall petition the Court for final determination thereof."

At trial Leslie requested a $2000 reimbursement for prior summer camp expenses which Irwin stipulated he did not pay. Leslie offered no evidence that she consulted with Irwin prior to incurring the expenses. Furthermore, she admitted that she received a letter from Irwin in May of 1978 in which he objected to her selection of camps. The trial court held that the provision in the agreement concerning summer camp was not clear and ordered Irwin to pay 60 percent of the summer camp tuition.

■■ Leslie argues that the trial court had no authority to modify the provision in the agreement concerning Irwin's payment of summer camp expenses. We agree. Like the Bar Mitzvah provision, the summer camp provision unambiguously requires Irwin to pay the entire amount of the expenses. Therefore, that portion of the trial court order which required Irwin to pay only 60 percent of future summer camp tuition is hereby reversed.

Leslie also argues that she is entitled to a $2000 reimbursement for prior summer camp expenses. However, the agreement provides that Leslie must consult with Irwin before incurring any such expenses. If Irwin refuses to give his consent and Leslie believes that such a refusal is unreasonable, her remedy is to petition the court for a final determination. ■■ Leslie presented no evidence to show that she consulted with Irwin concerning the disputed expenses. She therefore had no right to present Irwin with a fait accompli and a request for reimbursement. (See *Van Nortwick v. Van Nortwick* (1967), 87 Ill. App. 2d 55, 230 N.E.2d 391.) Thus, there was no error in the trial court's refusal to award Leslie the disputed $2000.

## Attorney's Fees

The trial court ordered Irwin to pay $1500 of Leslie's attorney's fees. Both parties contend that the trial court abused its discretion. Leslie argues that the award is inadequate, while Irwin asserts that Leslie was not entitled to any fees.

During closing arguments Leslie's attorney, Burton Grant, described his expertise in the field of matrimonial law. He asked the court to award him $28,100 in fees and costs. Grant stated that he spent 100 hours in court (at the rate of $175 per hour) and 102 hours in his office (at the rate of $100 per hour) in this cause. Grant presented no verified petition for fees and no itemization of the work performed. See *In re Marriage of Jacobson* (1980), 89 Ill. App. 3d 273, 411 N.E.2d 947.

The Illinois Marriage and Dissolution of Marriage Act provides that after due notice and hearing and after considering the financial resources of both parties, the trial court may order either spouse to pay a reasonable amount for costs and attorney's fees necessarily incurred by the other spouse. (Ill. Rev. Stat. 1977, ch. 40, par. 508(a).) To justify an allowance of fees, the party seeking relief must show financial inability to pay and the ability of the other spouse to pay. (*Donnelley v. Donnelley* (1980), 80 Ill. App. 3d 597, 400 N.E.2d 56.) It is not necessary that the spouse seeking fees be destitute; it is sufficient that disbursement of his funds would exhaust his estate, or strip him of his means of support and undermine his economic stability. (*Donnelley; Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 373 N.E.2d 576.) Although the allowance of fees rests largely in the trial court's discretion, such an award will be reversed when the financial circumstances of both parties are substantially similar and the party seeking fees has not shown his inability to pay. *Miller v. Miller* (1980), 84 Ill. App. 3d 931, 405 N.E.2d 1099.

■■ We do not believe that Leslie has shown an inability to pay her own attorney's fees. As we have previously discussed, Leslie has a net worth of over $500,000 and a substantial annual income. A requirement that she pay her own fees will neither exhaust her estate nor undermine her economic stability. She has, in fact, already paid her attorney more than $10,000 in fees. Therefore, that portion of the trial court's order which provided that Irwin must contribute $1500 toward Leslie's attorney's fees is hereby reversed.

### RETROACTIVITY

Leslie's petition for a rule to show cause alleged that Irwin refused to pay the retroactive increase in child support. Leslie relied on an order dated December 9, 1977, which stated that "any Order entered herein relative to an increase in child support shall be retroactive to the date of December 9, 1977." This order gave Leslie leave to file her petition for modification of judgment for divorce and other relief. Her petition was filed on December 14, 1977. Although the December 9 order began with the words "by agreement," the order did not contain the signature of either Irwin or his attorneys.

In his respose to the petition, Irwin attacked the validity of the

order. Irwin stated that on December 9, 1977, he was not represented by counsel and did not agree to any retroactive application of a subsequent increase. The trial court made no finding concerning the validity of the agreed order; however, on February 4, 1980, it held that the order of May 8, 1979, which increased the amount of child support by $180 per month, was not retroactive.

The agreed order was a contract made by the parties and approved by the court. It was not a judicial determination on the issue of retroactivity and it was not the judgment of the court, except in the sense that the court allowed it to go upon the record and have the effect of a judgment. *Aleman v. Carrillo* (1977), 49 Ill. App. 3d 93, 364 N.E.2d 892.

■■ In the contempt proceeding, Irwin collaterally attacked the validity of the December 9, 1977, order. Although a judgment cannot be impeached or contradicted in a collateral action or proceeding, an exception exists when the judgment was procured by fraud. (*Chicago Park District v. Kenroy, Inc.* (1978), 58 Ill. App. 3d 879, 374 N.E.2d 670, *rev'd in part on other grounds* (1980), 78 Ill. 2d 555, 402 N.E.2d 181.) Such was Irwin's contention in the instant case. The trial court should have conducted an evidentiary hearing to determine whether Irwin did agree to the entry of the order. Thus, we reverse the order of February 4, 1980, and remand this matter for further proceedings. If the trial court finds that Irwin consented to the order and that there was no fraud, the increase in child support shall be retroactive to December 9, 1977.

■■ Leslie argues that even in the absence of an agreed order, the trial court was required to make the increase retroactive to the date of filing of the petition for modification. We disagree. Once a petition has been filed, upon a showing of material change of circumstances, support payments *can* be modified as of the date the petition was filed. (*Dixon v. Dixon* (1977), 45 Ill. App. 3d 934, 360 N.E.2d 486.) The decision by the court to make the modification retroactive is purely discretionary.

For the foregoing reasons, the judgments of the circuit court of Cook County are modified in part, reversed in part and reversed and remanded in part.

Modified in part, reversed in part, and reversed and remanded in part.

RIZZI, P. J., and McNAMARA, J., concur.