W. H. LYMAN CONSTRUCTION CO., Plaintiff-Appellant, v. THE VIL-
LAGE OF GURNEE, Defendant-Appellee.

Second District   No. 84—0153

Opinion filed February 27, 1985.

Donald V. O'Brien and LaDonna M. Loitz, both of O'Brien & O'Rourke, of Chicago, for appellant.

Julian Johnson, of Snyder, Clarke, Dalziel & Johnson, of Waukegan, for appellee.

JUSTICE HOPF delivered the opinion of the court:

This is the second time this case is before this court. (See *W. H. Lyman Construction Co. v. Village of Gurnee* (1980), 84 Ill. App. 3d 28, 403 N.E.2d 1325.) In this appeal, plaintiff claims the trial court erred: (1) in granting the village's motion for summary judgment on count II of plaintiff's third amended complaint; (2) in granting the village's motion for a directed verdict on count I of the third amended complaint; and, (3) in permitting defendant Baxter and Woodman to participate in the proceeding below when there were no claims pending against it.

Plaintiff, W. H. Lyman Construction Company (Lyman), was the successful bidder on a sanitary sewer project advertised by the village

of Gurnee (village). Lyman's bid was computed on the basis of certain plans and specifications prepared for the village by the engineering pervising engineer for the project on behalf of the village. Following pervising engineer on behalf of the village for the project. Following completion of the project, Lyman filed a complaint, and later an amended complaint, against the village and Baxter and Woodman, alleging that the village had breached its implied warranty of accuracy and sufficiency of the plans and specifications provided to plaintiff, and that Baxter and Woodman acted negligently in designing certain manhole bases and in administering the contract. As a result, Lyman alleged it was required to expend a significant amount over and above the stated amount of the contract, and sought damages in the amount of $675,000. In the first appeal, this court reversed part of the lower court's dismissal of plaintiff's amended complaint.

Upon remand to the circuit court of Lake County, plaintiff filed its third amended complaint containing two counts against the village and one count against Baxter and Woodman. Count I alleged that the village breached its implied warranty of accuracy and sufficiency of the plans and specifications pertaining to the construction of the manhole bases. Count II sought to recover from the village certain expenses incurred by plaintiff in providing additional granular bedding material over and above the amount specified in the contract. Finally, count III alleged negligence against Baxter and Woodman in designing the manhole bases and in administering the contract. During the course of the proceedings below, the village filed a cross-claim against Baxter and Woodman alleging that if the village was found liable to plaintiff, then Baxter and Woodman was liable to the village based on the contract between the village and Baxter and Woodman. The village's subsequent motion for summary judgment on the cross-claim was granted, and Baxter and Woodman was ordered to indemnify the village should the village be found liable to plaintiff.

Subsequently, the village moved for summary judgment on count II of plaintiff's third amended complaint, relating to damages for the extra bedding material supplied by plaintiff. The motion alleged, in part, that the extra bedding was necessary to maintain the grade level of the pipe and was due to the soil conditions on the site, which this court held were the responsibility of the plaintiff. (See *W. H. Lyman Construction Co. v. Village of Gurnee* (1980), 84 Ill. App. 3d 28, 33, 403 N.E.2d 1325.) The motion also stated that any alleged promise made by John Loete, an employee and engineer for Baxter and Woodman, to pay for the extra bedding was unenforceable as being without consideration and beyond the scope of his authority. After re-

viewing the pleadings, depositions, and affidavits in the record, and considering the arguments of counsel, the court granted the village's motion for summary judgment on count II. Additionally, plaintiff moved to voluntarily dismiss count III of its complaint and Baxter and Woodman as a defendant. The motion was granted over the village's objection.

The case proceeded to trial on count I of the third amended complaint, which alleged a breach by the village of its implied warranty of the accuracy and sufficiency of the plans and specifications relating to construction of the manhole bases. Baxter and Woodman also took part in the trial. According to the plans and specifications, 10 manholes were to be installed on the project. The manhole base for each was a reinforced concrete structure approximately six feet in interior diameter, with a hole on either side, and an eight-inch wall thickness. The holes in the structures were several inches larger than the outside diameter of the 42-inch reinforced concrete pipe which was to be inserted into the holes at the manhole base. The dispute in count I focused upon the meaning of certain language in the contract which stated:

> "Spaces around and under all pipes entering at the bottom of manholes shall be filled with concrete from the outside."

During trial, these spaces were referred to as "annular spaces." The contract also required that the pipe and manholes be installed to a certain line and grade, but was silent as to how this was to be accomplished while filling the annular spaces around the pipe with concrete. Accordingly, plaintiff devised a method whereby brick and mortar were placed in part of the annular spaces around the pipe so as to hold it to the specified line and grade. Then, the concrete was poured into the remainder of the annular spaces. According to plaintiff, the brick and mortar also served to prevent the concrete from flowing back into the manhole bases. When this work was completed, it was discovered that there were leaks in the manhole bases. Plaintiff expended significant amounts in order to rectify the problem.

At the close of the plaintiff's case, the village moved for a directed verdict on count I, alleging that the plans and specifications required that the entire annular space be filled with concrete and that plaintiff's use of brick and mortar was a departure from the plans and specifications. The village further argued that, having departed from the plans and specifications, the plaintiff warranted its work and could not complain of design deficiencies. The trial court granted the village's motion for a directed verdict, finding that the contractual provisions relating to the filling of the annular spaces were unambigu-

ous, that plaintiff did not follow the plans and specifications in that it failed to fill the entire annular space with concrete, and that plaintiff thereby constructed the manholes at its peril and warranted the project as constructed.

■ Plaintiff first contends that the trial court erred in granting the village's motion for summary judgment on count II of plaintiff's third amended complaint, pertaining to extra granular bedding material. The contract between the village and Lyman provided, in relevant part:

"BEDDING OF PIPES:

Granular bedding materials shall be uniformly placed and compacted to support the bottom quadrant of all pipes. *Bedding materials shall be placed with minimum thicknesses of 4-inches under pipe barrels and 2-inches under bells.*" (Emphasis added.)

Plaintiff alleged in count II of the complaint that during the course of construction, John Loete, the Baxter and Woodman resident engineer for the village, directed plaintiff to place more than four inches of granular bedding material beneath the pipe. It was also alleged that plaintiff complied with these directions and with a provision of the contract which required that the "Contractor shall proceed to make such changes [in the work] without causing delay." The count further stated that plaintiff was directed by Loete to maintain records of the amounts of additional granular bedding material used, and was assured that the village would pay for such additional material. Finally, count II alleged that the village was aware that extra bedding material was used, and that plaintiff was then informed by Baxter and Woodman that no additional payment would be made.

In its motion for summary judgment, the village alleged that it was the soil conditions that necessitated the use of the extra granular bedding material, that such conditions were the responsibility of the plaintiff, that plaintiff never submitted any proposed change or claim for payment of the extra material, that Loete was without authority to promise payment for the additional material, and that any alleged promise by Loete was contrary to the terms of the contract. Attached to the village's motion were excerpts from the depositions taken by George Lyman, president of Lyman, and Roger Doolin, plaintiff's foreman; these depositions were incorporated by reference into the motion. In their depositions, both Lyman and Doolin stated that Lyman had encountered difficulty in getting a firm bed for the laying of the pipe and that in order to get the firm bed, additional bedding material had to be used. Lyman further stated in his deposition that in a

job such as this one, four inches of bedding material was not a usual amount for the laying of the sewer pipe, but that eight inches to two feet would usually be required in ground conditions such as those here. He also stated that Lyman had laid pipe under similar conditions numerous times before, and if additional bedding material was used over and above the amount called for in the specifications, it was always a subject of additional compensation. Finally, during his deposition, Lyman stated that in the instant case, there was no unit price for the bedding material and none was asked for by Lyman at any time during the course of the job. However, later in the deposition, Mr. Lyman stated that Lyman knew the unit price for the bedding because it had a contract with a firm that was supplying the bedding material. However, no reimbursement request was made by Lyman until after completion of the job.

In addition to these allegations and the motion for summary judgment, this court's opinion in the initial appeal of this cause was a matter of record in the trial court. In that opinion, this court found that plaintiff had an affirmative duty to inspect the site, including subsurface conditions, and to deal with adverse subsoil conditions and additional expenses encountered during construction due to plaintiff's failure to inspect. *W. H. Lyman Construction Co. v. Village of Gurnee* (1980), 84 Ill. App. 3d 28, 33, 403 N.E.2d 1325.

It is well established that summary judgment should only be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1983, ch. 110, par. 2–1005.) In deciding such a motion, any evidence in support of it must be construed strictly against the moving party and liberally in favor of the opponent. (*Fryison v. McGee* (1982), 106 Ill. App. 3d 537, 539, 436 N.E.2d 12.) Summary judgment is an extraordinary measure and should be employed only where the right of the movant is clear and free from doubt. (*Susmano v. Associated Internists of Chicago, Ltd.* (1981), 97 Ill. App. 3d 215, 219, 422 N.E.2d 879.) It should be awarded with caution so as not to preempt a right to a trial by jury or the right to fully present a factual basis for a case where a material dispute may exist. *Decatur Construction, Inc. v. Central Illinois Public Service Co.* (1974), 16 Ill. App. 3d 1056, 1059, 307 N.E.2d 431.

In the instant case, plaintiff suggests the following issues of material fact which it claims precluded the trial court from granting the village's motion for summary judgment in the instant case: (1) whether defendant's conduct was such that it could be said to have

waived the requirement that the request for extra compensation be in writing; (2) the meaning of "minimum"; and, (3) whether the soil conditions which necessitated the additional stone were of the type which could not have been discovered in an inspection by plaintiff and thus were not the responsibility of the plaintiff.

With respect to this last suggested material issue of fact, plaintiff failed to submit any affidavits, depositions, etc., in the trial court which would support its claim that the soil conditions necessitating the additional stone were of the type which could not have been discovered upon inspection. Further, this court's opinion in the first appeal of the cause made it clear that indeed plaintiff had an affirmative duty to inspect the subsurface soil conditions and that it was responsible for any additional expenses incurred as a result of its failure to inspect. (*W. H. Lyman Construction Co. v. Village of Gurnee* (1980), 84 Ill. App. 3d 28, 33, 403 N.E.2d 1325.) Additionally, there is no dispute that plaintiff had the duty under the contract to provide a firm bed for the laying of the sewer pipes. Lyman and Doolin both stated in their depositions that the extra bedding material was required in order to obtain a firm bed and that this additional material was needed due to unexpected subsurface soil conditions. There was absolutely no indication that this was not the type of problem which could have been discovered had plaintiff complied with its duty to inspect. Thus, this was not a genuine issue of material fact which would have precluded the granting of a summary judgment in the instant case.

■ With respect to the meaning of the term "minimum" in the contract, it is well settled that the meaning of contractual terms is determined by the court as a matter of law, while it is for the jury to determine what terms comprised the contract and the intent of the parties. (*National Tea Co. v. Commerce & Industry Insurance Co.* (1983), 119 Ill. App. 3d 195, 200, 456 N.E.2d 206.) The plain language of the provision in question, and specifically the term "minimum," means "the least quantity assignable, admissible, or possible in a given case ***." (Webster's Third New International Dictionary 1438 (1981).) Thus, by the plain language of this provision, the village was setting only a minimum limit on the amount of bedding material which it would accept, but was permitting the contractor to use more than this amount if it was needed to obtain a firm foundation, which was undisputedly plaintiff's responsibility to provide. Accordingly, there was no "bedding design" specified by the village, other than the minimum specifications given, of which the plaintiff could complain. Further, George Lyman stated in his deposition that in conditions such as those here, eight inches to two feet were usually used to

make the bed. Thus, the clear inference is that if plaintiff had inspected the site, as it was required to do before making its bid, it would have anticipated the use of the extra bedding material and would have increased its bid accordingly. Further, although Mr. Lyman stated in his deposition that typically additional bedding material is the subject of additional compensation, we do not construe this testimony as constituting evidence of custom and usage in the industry on the meaning of the term "minimum." To the contrary, Mr. Lyman's deposition testimony never referred to the interpretation of the term "minimum" in construction contracts. Accordingly, we conclude that there was no genuine issue of material fact as to the meaning of the term "minimum" in the contract.

■■ Finally, plaintiff claims that there was a genuine issue of material fact on whether defendant waived the requirement that the request for extra compensation be in writing. Even assuming the defendant, through its agent, John Loete, waived the requirement that the request be in writing, there is no authority for the proposition that such an agent could vary the terms of the contract and agree to pay for materials which plaintiff already had an obligation to provide. A promise to do that which one is already legally obligated to do is no consideration and does not create new obligations. (*In re Marriage of Roth* (1981), 99 Ill. App. 3d 679, 684, 426 N.E.2d 246.) In the instant case, plaintiff was already legally obligated to provide sufficient granular bedding material to accomplish a firm bed for the laying of the pipes. Thus, the use of more than the four-inch minimum to obtain this result was not consideration for Loete's alleged promise to pay for the cost of the additional material. (*In re Marriage of Roth* (1981), 99 Ill. App. 3d 679, 684, 426 N.E.2d 246.) We therefore conclude that the trial court did not err in granting the village's motion for summary judgment on count II of plaintiff's third amended complaint.

■■ Plaintiff's next contention is that the directed verdict in favor of the village on count I, relating to the concrete encasement of the pipes, was improperly granted, since the evidence and the reasonable inferences to be drawn from the evidence, construed most strongly in favor of the plaintiff, did not so overwhelmingly favor the movant (*i.e.*, the village), that no contrary verdict based on that evidence could ever stand. See *Sunseri v. Puccia* (1981), 97 Ill. App. 3d 448, 422 N.E.2d 925; *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

There was no dispute at trial that John Loete, the resident engineer from Baxter and Woodman, instructed Lyman to encase the

sewer pipes in concrete where they entered the manhole bases. George Heck, the designer of the sewer for Baxter and Woodman, was called by plaintiff to testify as an adverse witness. He indicated that the purpose of the specification in question was to ensure that the void between the pipewall and the manhole wall was filled with concrete to keep the outside soil and water from entering the manhole. In Heck's judgment, and based upon his experience, the placement of good quality ready-mix concrete in the annular spaces throughout the thickness of the manhole wall would have accomplished this result. Heck also testified that the entire annular space could have been filled, as required in the contract, by supporting the pipe on block or brick on the inside of the manhole structure rather than in the annular space, lining the pipe up from inside to some point outside the manhole, and then filling the entire annular space with concrete.

Plaintiff relies on the testimony of four other witnesses to support its position that the evidence was not so overwhelmingly in favor of the village as to support the directed verdict. Roger Doolin and James Welch each testified that John Loete had instructed them to encase the pipes with concrete but that no one told them to use brick and mortar and that they did this on their own. Jim Crawford, an employee of Lyman, also testified as to the brick and mortar procedure.

Otto Larsen, the head of outside field operations for Baxter and Woodman at the time of the project, testified that insofar as he observed the construction methods followed by Lyman, he did not have occasion to disapprove of them. The resident engineer was responsible for observing the construction procedures and reporting their progress to Larsen. No reports were received from the resident engineer that the project was not being constructed according to the plans and specifications. Larsen testified that pipe has a tendency to move in the process of pouring the concrete if it is not properly supported or locked in place. He stated, however, that in the course of his duties as the person ultimately in charge of this process, he did not come to learn how the contractor blocked the pipe in this job. Larsen testified as to the prevailing method in 1976 of blocking pipe as it comes into precast manholes as in this case. He stated that under the conditions that existed in this job, the prevailing method of blocking was to wedge the pipe in position so that it will not move laterally or vertically during the process of pouring the concrete in the void outside the manhole. He further stated that in a situation like this, the only place to wedge it would be between the wall of the manhole opening and the outside of the wall of the pipe, within the annular space that

is the subject of this suit. He stated that as the engineer, this method would be acceptable to him. He stated that locking the pipe in place under the conditions that existed here could not be accomplished "very well" from outside the manhole due to the unstable soil conditions. Larsen also believed that supporting the pipe from the inside of the manhole would be "possible" but probably not "acceptable," because it would require a greater amount of pipe protruding into the manhole than would be desirable. On cross-examination, Larsen stated that while working for Baxter and Woodman, he was not responsible for any design work. He also stated that if the pipe extended some four inches to six inches into the manhole space, as in the present case, then it would be possible to compensate for any vertical and lateral movement with some sort of form either out of metal or wood, and thereby avoid placing a wedge in the annular space. Such a form would prevent seepage of concrete into the manhole as well.

Additionally, plaintiff introduced the testimony of an expert witness, Lloyd Jones, who testified that the use of any amount of ready-mix concrete to fill the annular spaces would not effectively waterproof the manhole bases.

In ruling on the village's motion for a directed verdict, the trial court first found that the contractual provision in question was unambiguous. Plaintiff urges us to consider extrinsic evidence in determining the meaning of the statement, "Spaces around and under all pipes entering at the bottom of manholes shall be filled with concrete from the outside." In construing the terms of a contract, they must be given their ordinary and natural meaning when they are clear and unambiguous, and no parol or extrinsic evidence may be considered to vary the meaning of the terms. (*Susmano v. Associated Internists of Chicago, Ltd.* (1981), 97 Ill. App. 3d 215, 219, 422 N.E.2d 879.) Whether an ambiguity exists in a contract is to be determined by the court as a matter of law. (97 Ill. App. 3d 215, 219, 422 N.E.2d 879.) A contract is ambiguous where the language used is reasonably susceptible to more than one meaning. 97 Ill. App. 3d 215, 219, 422 N.E.2d 879.

Plaintiff argues that the provision in question is ambiguous and that it may be interpreted as permitting a portion of the spaces around and under all pipes to be filled with a material other than concrete, namely bricks and mortar. We disagree and do not believe that the plain language of the contract permits such a construction. Accordingly, the trial court properly found the contract to be unambiguous.

This being the case, the evidence offered by the plaintiff clearly demonstrates that the plaintiff was deviating from the terms of the

contract when it filled a portion of the annular space with a material other than concrete. Although plaintiff argues that John Loete impliedly approved of the plaintiff's method of blocking by not reporting a deviation from the plans and specifications, we could discover no evidence in the record that Loete in fact observed or even was aware that a portion of the spaces were being filled with brick and mortar. Had such evidence been introduced, plaintiff's claim that any deviation from the plans was consented to by the village (through Baxter and Woodman) would have had at least some support in the record. However, the testimony of all of plaintiff's witnesses indicated that Loete, contrary to any consent, directed plaintiff to encase the pipes at the manhole bottoms with concrete.

Further, Otto Larsen's testimony regarding acceptable industry methods for blocking the pipes could not alter the fact that plaintiff had not filled the entire annular space with concrete, as required by the contract. Nor does his testimony regarding what he would have found acceptable and unacceptable here excuse plaintiff from its failure to perform its end of the bargain. Similarly, a verdict for plaintiff could not be based upon Lloyd Jones' testimony that had the plans and specifications been complied with, there still would have been a leakage problem. A negligent design by an architect or engineer cannot be interposed as a defense by a contractor who has failed to comply with the plans and specifications provided him. (*Corbetta Construction Co. v. Lake County Public Building Com.* (1978), 64 Ill. App. 3d 313, 328, 381 N.E.2d 758.) The contractor has a duty to carry out the construction in accordance with the plans and specifications agreed upon and can depart from them only at its peril. (64 Ill. App. 3d 313, 328, 381 N.E.2d 758.) Accordingly, we conclude that plaintiff's departure in the instant case from the plans and specifications provided by the village now precludes it from alleging a faulty design in those specifications. Thus, the directed verdict was properly granted.

■ Finally, we consider the question whether Baxter and Woodman was properly allowed to participate in the trial below where there were no claims pending against it. It is clear that the summary judgment obtained by the village against Baxter and Woodman made it an interested party to this litigation. The fact that the village's cross-claim had been litigated prior to trial in this case did not eliminate Baxter and Woodman's interest in the present litigation. To the contrary, Baxter and Woodman's interest was increased since it had already been determined that it would be held liable for any liability found on the part of the village. Under these conditions, Baxter and

Woodman, if not an actual party to the case pursuant to section 2—406 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—406), had a right to intervene pursuant to section 2—408(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—408(a)). Although section 2—408(e) requires that the party in question file a petition in the court, intervention may be accomplished by oral motion and a subsequent filing of an answer setting up their interests. (*Miller v. Clark* (1921), 301 Ill. 273, 133 N.E. 685.) Any failure in the instant case to formally file a petition pursuant to this section was harmless, since an oral motion was apparently made, an answer to the complaint was already on file, and clearly Baxter and Woodman would be affected by the judgment in the action. Accordingly, we conclude that there was no error in permitting Baxter and Woodman to participate in the proceeding below.

For the reasons previously stated, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

REINHARD and UNVERZAGT, JJ., concur.