**Lt. Col. M.T. SALAYMEH,
M.D., Plaintiff,**

v.

**ST. VINCENT MEMORIAL HOSPITAL
CORPORATION, an Illinois
Corporation, Defendant.**

No. 88–3249.

United States District Court,
C.D. Illinois,
Springfield Division.

Feb. 22, 1989.

Robert M. Owens, Decatur, Ill., for plaintiff.

Gary Mayes, St. Louis, for defendant.

## OPINION

RICHARD MILLS, District Judge:

The doctrine of res judicata does not apply.

Neither does the theory of collateral estoppel.

But there is a lack of consideration to support the alleged contract.

The Hospital's motion for summary judgment is allowed.

### I—Facts

The facts are not complicated. Plaintiff is a physician and a former member of the Hospital's medical staff. From 1971 through August of 1984, Plaintiff had staff privileges at the hospital as a general surgeon with a subspecialty of thoracic surgery. In April of 1984, the Hospital commissioned InterQual, an independent medical review entity, to evaluate 100 operative procedures conducted during a one year period at the Hospital. The report of Inter-Qual "identified substandard and unacceptable practice related to [Dr. Salaymeh's] performance...." It concluded that "the community would be better served if [Dr. Salaymeh's] private privileges to perform major intra-abdominal and gastrointestinal surgical procedures were completely withheld."

The Hospital's administrator provided Plaintiff with a copy of the pertinent part of the InterQual report on August 27, 1984. On August 28, 1984, the Hospital's administrator delivered a letter to Salaymeh which outlined three options (which had been discussed with Plaintiff on the 27th) which Plaintiff could pursue. First, Plaintiff could voluntarily terminate his surgical privileges. Second, he could receive a summary suspension pending a hearing pursuant to the Hospital's by-laws. Finally, Plaintiff could voluntarily refrain from performing surgery at the Hospital pending review of the InterQual report by the Hospital's Medical Staff pursuant to the by-laws. On August 29, 1984, Plaintiff tendered his resignation of his surgical privileges, thereby avoiding by-law procedures.

Upon receiving Plaintiff's resignation on behalf of the Hospital, the administrator sent a letter to Plaintiff accepting the resignation and stated: "In accordance with this withdrawal of all surgical privileges, the hospital agrees that the review of the hospital's surgical practice (InterQual Study) will be maintained by the hospital in a confidential manner and will not be released to anyone except pursuant to a court order." Plaintiff alleges that a contract of confidentiality arose as a result of these two letters (his letter of resignation and Koerner's return letter promising confidentiality).

On November 16, 1984, the Hospital held a public meeting and invited prominent members of the Taylorville community and the press. Plaintiff alleges that certain statements were made at this meeting by agents of the Hospital which breached Plaintiff's contract of confidentiality.

On January 23, 1985, Plaintiff filed suit in Illinois state court (cause No. 85–L–2)

against the Hospital, its owners, its attorneys, its executive officer, the president of its board of directors, and InterQual. The original complaint was pled in three counts: (1) conspiracy to interfere with Plaintiff's contractual relationship with the Hospital regarding his surgical privileges (for ease of identification this contractual relationship will be referred to as Plaintiff's employment contract); (2) interference with the employment contract; and (3) defamation arising out of the November public meeting.

On September 3, 1985, the state court dismissed the complaint in its entirety and granted leave to amend. On October 2, 1985, Plaintiff filed an amended complaint. Counts I, II, and III of the amended complaint stated the same claims as the original complaint. In addition, Plaintiff added Counts IV and V. Count IV was pled as a breach of contract claim against the Hospital alleging breach of the confidentiality contract. Count V was pled as an action against the Hospital's attorneys for interfering with Defendant's confidentiality contract with Plaintiff.

On January 28, 1986, the state court dismissed Counts I, II, and V of the amended complaint with prejudice. Count III (defamation) was dismissed with leave to replead. Count IV (breach of the confidentiality contract) was upheld but certain prayers for relief were stricken. On April 14, 1986, pursuant to the Hospital's motion to reconsider, the state court dismissed Count IV of the amended complaint as failing to state a claim upon which relief could be granted. Plaintiff was given leave to replead this count, which Plaintiff did.

The Hospital again filed a motion to dismiss Count IV. Before the state court could rule on this motion, Plaintiff moved to voluntarily dismiss the amended Counts III (defamation) and IV (breach of confidentiality contract) pursuant to Illinois' Code of Civil Procedure section 2–1009. Ill.Rev.Stat. ch. 110, ¶ 2–1009. Plaintiff's motion was allowed. He then appealed the dismissals with prejudice of Counts I (conspiracy to interfere with the employment contract), II (interference with the employ-

ment contract), and V (interference with the confidentiality contract). By opinion entered May 28, 1987, the Illinois Appellate Court, Fifth District, affirmed the trial court's dismissal of Counts I, II, and V. *Salaymeh v. InterQual, Inc.*, 155 Ill. App.3d 1040, 108 Ill.Dec. 578, 508 N.E.2d 1155 (5th Dist.1987).

On April 8, 1987, Plaintiff filed an action against the Hospital and others in the circuit court of Christian County, Illinois (cause No. 87–L–19) alleging defamation (Count III from cause No. 85–L–2). That claim is presently pending. On September 16, 1988, Plaintiff filed the instant action alleging breach of the confidentiality contract (Count IV from cause No. 85–L–2).

## II—Summary Judgment

Under Fed.R.Civ.P. 56(c), summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Unquestionably, in determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). Nevertheless, the rule is also well established that the mere existence of some factual dispute will not frustrate an otherwise proper summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Thus, the "preliminary question for the judge [is] not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed." *Id.* at 251, 106 S.Ct. at 2511 (quoting *Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1872)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Applying this standard, the Court now turns to the case at bar.

## III—Analysis

### A. Res Judicata

■ Because the original action was brought in state court, we must apply Illinois res judicata rules to determine whether the instant action is barred. *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1232 (7th Cir.1986); *Restatement (Second) of Judgments* § 86 (1982). The Seventh Circuit stated in *Henry:*

> Adopting the definition of *res judicata* set out by the Supreme Court in *Cromwell v. County of Sac*, 4 Otto 351, 94 U.S. 351, 24 L.Ed. 195 (1876), the Illinois courts have consistently held that the bar of *res judicata* extends not only to questions actually decided, but also to all grounds of recovery and defenses which might have been presented in the prior litigation between the parties.

*Henry*, 808 F.2d at 1234 (citing *Lake v. Tomes*, 405 Ill. 295, 300–01, 90 N.E.2d 774 (1950); *Leitch v. Hine*, 393 Ill. 211, 220, 66 N.E.2d 90 (1946)).

The fact that we must apply Illinois state law, rather than federal law, to this issue is of critical importance. Under the federal rule in this circuit, which follows section 24 of the *Restatement (Second) of Judgments*, Plaintiff must pursue all claims "against the Defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *See Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir.1986); *In re Energy Cooperative, Inc.*, 814 F.2d 1226, 1230 (7th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 294, 98 L.Ed.2d 254 (1987). Under this test we believe Plaintiff's claim would be barred as the instant claim arose from the same "series of transactions" as those pursued in the original state court action.

■ However, the Illinois courts apply a more narrow formulation of the standard of claim preclusion. The rule in Illinois is stated as follows:

> [W]hether or not a judgment is a bar to a subsequent action under the rule against splitting causes of action depends on whether the entire amount claimed to be due plaintiff arises out of one and the same act or contract, or whether the several parts arise from distinct acts or contracts.

*Cheatem v. Cook*, 23 Ill.App.3d 862, 867, 320 N.E.2d 520 (1974) (quoting *Ernest Freeman & Co. v. Robert G. Regan Co.*, 332 Ill.App. 637, 645, 76 N.E.2d 514 (1947)). Here, the only claim pressed against the Hospital to final judgment in cause No. 85–L–2 was conspiracy to interfere with Plaintiff's employment contract. The claim pressed in the instant action is breach of the confidentiality contract. Though these claims arose from the same "series of transactions," they obviously did not arise from the same contract. Thus, Illinois rules allow the subsequent action.

Though we are bound to apply it, the Court believes this cause clearly shows that the Illinois rule is inadequate in upholding the policy behind the doctrine of res judicata. Plaintiff has made a mockery of the central proposition of res judicata that " 'a party who has had a full opportunity to present a contention in court ordinarily should be denied permission to assert it on some subsequent occasion.' " C. Wright, *Law of Federal Courts* § 100A, at 678 (quoting Hazard, *Res Nova in Res Judicata*, 44 S.Cal.L.Rev. 1036, 1043 (1971)). As the Seventh Circuit stated in *Harper Plastics, Inc. v. Amoco Chemicals Corp.*, 657 F.2d 939, 946 (7th Cir.1981): "We fail to discern the unfairness in requiring a plaintiff to join all relevant theories of relief in a single proceeding." In the interests of finality, judicial economy, and relieving the Defendant of the burden of defending against a multiplicity of suits, the instant cause of action and the presently pending defamation case in state court (No. 87–L–19) should have been litigated in the initial state court action (No. 85–L–2) as all these claims arose from the same series of transactions and, therefore, should have been heard together.

Because of crowded dockets, it is difficult for courts to give litigants the one day in court they deserve. The Plaintiff in this cause insists on having three. Thus, we press on in the hope that Illinois courts will

eventually see fit to follow the current trend among state courts to follow the approach of the *Restatement (Second) of Judgments* § 24 in dealing with res judicata questions.

### B. Choice of Law

Because this is a diversity case, Illinois law is controlling, including its choice of law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Adams v. Fred Weber, Inc.*, 849 F.2d 1018, 1020 (7th Cir. 1988). Federal courts applying Illinois choice of law rules in contract actions have applied the traditional test—the law of the place where the contract is performed and executed. However, the Court of Appeals for the Seventh Circuit has noted a trend in Illinois toward adopting the most-significant-contacts test. *Overseas Development Disc Corp. v. Sangamo Construction Co.*, 686 F.2d 498, 510–11 n. 43 (7th Cir.1982). Though the Illinois Supreme Court has not specifically addressed this issue, the Illinois appellate court has. In *Boise Cascade Home & Land Corp. v. Utilities, Inc.*, 127 Ill.App.3d 4, 13, 82 Ill.Dec. 180, 187, 468 N.E.2d 442, 449 (1984), the court stated: "[W]e believe that the most-significant-contacts test should be followed in conflict of laws cases involving contracts." *See also Purcell & Wardrope Chartered v. Hertz Corp.*, 175 Ill.App.3d 1069, 125 Ill.Dec. 585, 530 N.E.2d 994 (1988); *Champagnie v. W.E. O'Neil Construction Co.*, 77 Ill.App. 3d 136, 32 Ill.Dec. 609, 395 N.E.2d 990 (1979) (most-significant-contacts test applied in action challenging validity of an indemnity contract).

Under either approach, Illinois law applies. Negotiations took place in Illinois. Illinois was Plaintiff's residence at the time and is Defendant's place of business. Also, performance was to take place solely in Illinois as the subject of the alleged contract (the InterQual study) was held exclusively in Illinois. Under either test, Illinois law would be applicable in this cause.

### C. Immunity

■ Defendant asserts that it is entitled to summary judgment based on an Illinois statute which provides immunity for hospitals and individuals against civil liability for their actions in the peer review process. The statute states in pertinent part:

[I]t is the policy of this State to encourage peer review by health care providers. Therefore, no hospital and no individual who is a member, agent, or employee of a hospital, hospital medical staff, hospital administrative staff, or hospital governing board shall be liable for civil damages as a result of the acts, omissions, decisions, or any other conduct of a medical utilization committee, medical review committee, patient care audit committee, medical care evaluation committee, quality review committee, credential committee, peer review committee, or any other committee whose purpose directly or indirectly, is internal quality control or medical study to reduce morbidity or mortality, or for improving patient care within a hospital, or the improving or benefiting of patient care and treatment, whether within a hospital or not, or for the purpose of professional discipline.

Ill.Rev.Stat. ch. 111½, ¶ 151.2.

This section of the Hospital Licensing Act became effective August 16, 1985—after the accrual of Plaintiff's cause of action. *See* P.A. 84–164, § 2. However, Illinois courts have held that it should be applied retroactively. *Rodriguez–Erdman v. Ravenswood Hospital Medical Center*, 163 Ill.App.3d 464, 471–72, 114 Ill.Dec. 576, 516 N.E.2d 731 (1987); *Knapp v. Palos Community Hospital*, 176 Ill.App.3d 1012, ——, 126 Ill.Dec. 362, 370, 531 N.E.2d 989, 997 (1988) ("The fact that [¶ 151.2] became effective after the occurrence of the events at issue here does not make it inapplicable to this cause.").

Although retroactivity does not bar this section's applicability, we must find that it is inapplicable on other grounds. Plaintiff bases his action on a breach of contract, which breach allegedly occurred at a public meeting held by the Hospital's agents. Defendant maintains that the actions of its agents at the public meeting are covered by the immunity statute because the meeting was "inseparable from the hospital's efforts to promote internal quality con-

trol." Defendant further maintains: "Following Salaymeh's resignation word quickly circulated in Taylorville concerning his resignation and in Salaymeh's words, 'there was a lot of bad publicity on the part of the surgeons in the hospital.' ... As a result the hospital was compelled to respond to public inquiries and allegations concerning Salaymeh's resignation."

Clearly, the language of the statute is broad and meant to encompass a vast array of circumstances. The statute immunizes hospitals and individuals from civil liability "as a result of the acts, omissions, decisions, *or any other conduct*" of a peer review committee "whose purpose *directly or indirectly*" is internal quality control, reducing morbidity and mortality, or improving patient care, *"whether within a hospital or not,"* or for the purpose of professional discipline. Ill.Rev.Stat. ch. 111½, ¶ 151.2 (emphasis added). The purpose of this statute is "to foster effective self-policing by members of the medical profession in matters unique to that profession and to thereby promote the legitimate State interest in improving the quality of health care in Illinois." *Rodriguez–Erdman,* 163 Ill.App.3d at 470, 114 Ill.Dec. 576, 516 N.E.2d 731.

Notwithstanding the broad language of paragraph 151.2, the Court finds that the public meeting held by the Hospital's agents is not encompassed within it. The public meeting was basically a public relations effort, not an attempt to promote the quality of health care at the hospital. This public meeting was far removed from the "internal review situations," *id.* at 471, 114 Ill.Dec. 576, 516 N.E.2d 731, which paragraph 151.2 is meant to protect.

### D. Contract Consideration

■ Next, Defendant asserts that no legally binding consideration was exchanged because Defendant was obligated by Illinois statute to keep the InterQual report confidential. The pertinent statute, in effect when the contract was made (having become effective July 1, 1984), stated that all information and reports used by hospitals for internal quality control must remain privileged and confidential. Such information or reports may be used only for medical research, improving quality of care, or granting, limiting, or revoking staff privileges. Ill.Ann.Stat. ch. 110, ¶ 8–2101 (Smith–Hurd 1984).[1] Improper disclosure of such information or report is a criminal offense and is classified as a misdemeanor. Ill.Rev.Stat. ch. 110, ¶ 8–2105.

Defendant argues that because it was legally obligated to keep the report confidential, the promise to keep it confidential cannot serve as consideration to form a binding contract. As a general rule, this proposition is correct. *See, e.g., Boley v. Whipple,* 62 Ill.App.2d 448, 453, 211 N.E.2d 113 (1965) ("a promise to do something one is already legally obligated to do, by statutory requirement, creates no new obligation and is not a consideration for a contract."); *W.H. Lyman Construction Co. v. Village of Gurnee,* 131 Ill.App.3d 87, 94, 86 Ill.Dec. 276, 475 N.E.2d 273 (1985); *Libertyville Township v. Woodbury,* 121 Ill.App.3d 587, 592, 77 Ill.Dec. 207, 460 N.E.2d 66 (1984).

Plaintiff puts forth two arguments in opposition to this line of defense. First, Plaintiff argues that the confidentiality statute (paragraph 8–2101) does not apply to the InterQual report because the original intent in procuring the report was not for the purpose of internal quality control. Second, Plaintiff argues that if the confidentiality statute does apply, Defendant

---

1. The pertinent part of the statute states:

   All information, interviews, reports, statements, memoranda or other data of ... accredited hospitals or their medical staffs, including Patient Care Audit Committees, Medical Care Evaluation Committees, Utilization Review Committees, Credential Committees and Executive Committees, (but not the medical records pertaining to the patient), used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care, shall be privileged, strictly confidential and shall be used only for medical research, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges....

   Ill.Ann.Stat. ch. 110, ¶ 8–2101 (Smith–Hurd 1984).

should be estopped from asserting it. Plaintiff argues that the Hospital used the confidentiality promise to induce Plaintiff to voluntarily resign his surgical privileges, and Plaintiff has performed his part of the agreement.

### a. Confidentiality Statute

■ Plaintiff's first argument is without merit. Plaintiff asserts that the InterQual report "was never intended to be given to a medical review committee." Regardless of the perceived intent for use of the report, Plaintiff's own complaint, filed in state court action No. 85–L–2, supports the proposition that the report was procured for, and was used for, the purpose of internal quality control (as contemplated by the confidentiality statute). Plaintiff stated in that complaint:

In April 1984, tissue samples from two surgery cases were transmitted to IN-TERQUAL by the hospital tissue committee.

Thereafter the evaluation procedure was expanded at the request of the Hospital Medical Staff and its Executive Committee to include evaluation of some 100 plus operative procedures occurring in one year.

This evaluation was undertaken by the Hospital Medical Staff for its utilization in evaluating hospital procedures.

Clearly, the intent of commissioning the report was for the purpose of internal quality control to improve patient care. The study was commissioned to evaluate surgical procedures of the Hospital's physicians. This is just the type of report to which paragraph 8–2101 applies.

### b. Estoppel

■ Plaintiff's second argument, that Defendant should be estopped from asserting the statute as a basis for negating consideration for the alleged contract, is facially appealing. On one side, we have a physician allegedly given less than 24 hours to make a decision which will directly affect his career. He is given three choices for a course of action—none of them very appealing from his perspective. Finally, he is told, and subsequently receives a letter to the effect that, if he voluntarily resigns his privileges, the damaging report will be kept confidential.

On the other side, we have a hospital administrator who, it is alleged, was attempting to short-circuit hospital by-law procedure. And it is argued that he pressures Plaintiff into a corner from which Plaintiff must choose from among three unappealing choices which will effectively end his career as a surgeon at the Hospital. The administrator offers to keep the report confidential if Plaintiff will voluntarily resign his privileges.

But—as we have said—this argument is only *facially* appealing.

Under Illinois law, "[e]quitable estoppel is a doctrine that is invoked to prevent fraud and injustice; the test is whether, considering all the circumstances of the specific case, conscience and honest dealing require that a party be estopped." *Payne v. Mill Race Inn,* 152 Ill.App.3d 269, 276–77, 105 Ill.Dec. 324, 504 N.E.2d 193 (1987); *see also Roberts v. National Liberty Group of Cos.,* 159 Ill.App.3d 706, 709, 111 Ill.Dec. 403, 512 N.E.2d 792 (1987). The *Roberts* court further stated: "If a party's conduct has reasonably induced another to follow a course of action that otherwise would not have been followed, and which would be to the latter's detriment if he could not later repudiate such course of action, an estoppel will arise to prevent injustice or fraud." *Roberts,* 159 Ill.App. 3d at 709, 111 Ill.Dec. 403, 512 N.E.2d 792.

For our purposes, the operative phrase from the rule, as announced in *Roberts,* is "induced another to follow a course of action that otherwise would not have been followed." The Hospital's offer to keep the report confidential may have induced Plaintiff to voluntarily resign his privileges. Resigning his privileges was certainly a "detriment" to Plaintiff. However, whether the report was to be kept confidential solely based on a hospital administrator's promise to do so or because Illinois law required it was apparently immaterial to Plaintiff. Plaintiff provides us with no evidence that the hospital administrator's failure to tell him that the law

required the Hospital to keep the report confidential had the effect of inducing Plaintiff to follow a course of action that he would not have otherwise followed. Plaintiff's objective was to avoid the Hospital's by-law procedure which would have subjected him to the peer review process, which, in Plaintiff's opinion, may well have damaged his professional record.

Explaining why he selected the option of resigning his privileges and bypassing by-law procedure, which the other two options would have mandated, he stated: "So I took the voluntary action which will save my privileges from any damaging record, which is the voluntary withdrawal of all my privileges." Plaintiff does not argue that he would have chosen a different option (which would have included review under by-law procedure) had he known the report was to be kept confidential pursuant to state law. Further, Plaintiff resigned his privileges *before* the confidentiality promise was put in writing by the Hospital's administrator. We find, considering all the circumstances of this cause, that equitable estoppel does not apply.

In conclusion, we are clearly persuaded that Defendant must prevail. Applying the general rule that promising to do that which one is legally bound to do cannot serve as consideration to form a contract, we must hold that no contract exists between the parties and that this cause of action cannot survive.

*Ergo,* Defendant's motion for summary judgment is ALLOWED.

Case CLOSED.